John C. HULL, Plaintiff-Appellee,

v.

CHEVRON U.S.A., INC., Defendant-Appellant.

No. 85–1363.

United States Court of Appeals, Tenth Circuit.

Feb. 18, 1987.

See also, 10 Cir., 812 F.2d 590.

W. Thomas Sullins, II, (Michael J. Sullivan and Mark W. Gifford with him on the briefs) of Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., for defendant-appellant.

Jeff Wilson, Boise, Idaho, (Jack Gage, Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Before McKAY, MOORE, and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

In this negligence action, John C. Hull recovered a judgment of $420,000 from the defendant Chevron U.S.A., Inc. (Chevron or appellee) for an injury he received while working on one of Chevron's wells. Its motion for judgment notwithstanding the verdict denied, Chevron instituted this appeal urging the trial court erred in several respects, each affording a separate ground for reversal. Our review of the record and briefs belies these contentions and dictates affirmance of the district court.

## I.

At the time of the accident, April 14, 1981, Mr. Hull, an employee of Chase Drilling Company (Chase), was assisting two co-employees in unloading and moving drill collars, 8,000 pound cylinders utilized around the drill bit. The low man on the totem pole or "worm" in oil field parlance, Mr. Hull was positioning certain racks onto which the drill collars were temporarily being placed when one of the drill collars rolled off the tines of the forklift and onto his right leg, seriously injuring it.

Mr. Hull filed suit in the United States District Court for the District of Wyoming seeking damages for this injury against his employer, Chase, and the lessee, Chevron, which had hired Chase to drill the well. Pursuant to the Wyoming Workers Compensation Act, Wyo.Stat. §§ 27–12–101 to –805 (1977), the district court dismissed the action against Chase. In an amended complaint, Mr. Hull then alleged in three causes of action for negligence, strict liabil-

ity, and culpable negligence that Chevron (1) had a nondelegable duty in an ultrahazardous activity to maintain a safe working environment; (2) was negligent in failing to supervise the proper operation of the forklift which it had leased and placed on the site; (3) had failed to maintain a smooth and level terrain around the rig; (4) retained control of the drilling operations and, thus, was vicariously liable for the negligent acts of Chase's employees; and (5) owed Hull a duty of care as a third-party beneficiary of Chevron's federal lease which imposes certain safety requirements on oil and gas operators.

During the six-day trial, the jury heard testimony from Chase and Chevron employees, various safety and oil and gas experts, and medical and rehabilitation specialists. Mr. Hull sought to prove that under the particular day rate contract governing the relationship between Chase and Chevron, Chevron retained the right to control and direct the entire drilling operation. In defense, Chevron attempted to establish Chase's role as an independent contractor with primary control over the details of the drilling operation, Chase's negligence in failing to supervise its forklift operator who was alleged to have used amphetamines on the morning of the accident, and the plaintiff's negligence and contributing drug use. As a third-party defendant, Chase abandoned its pretrial contention that it was an independent contractor and put on evidence to underscore its theory that the "company man," Chevron's employee, Mr. Bobby Haynes, directed and supervised the drilling operation.

In returning a verdict for the plaintiff, the jury found by a preponderance of the evidence that Chevron and Chase were governed by a principal/agent, not operator/independent contractor, relationship. Consequently, the jury apportioned the negligence among the parties, finding Mr. Hull 30% negligent while Chevron and Chase were each judged 35% negligent. Of the $600,000 awarded in damages, Chevron was ordered to pay $420,000 plus interest and costs.[1] The district court denied Chevron's motion for judgment notwithstanding the verdict, and this appeal was instituted advancing the following issues.

## II.

■ At trial, Chevron sought to introduce evidence that after the accident Chase permitted only one of its employees to operate the forklift.[2] In its offer of proof, Chevron stated that a former employee would testify that after the accident Chase discharged the employee who had operated the forklift and adopted a more restrictive policy to designate a specific employee to operate the forklift. Chevron maintained that the evidence was intended to show that Chase controlled the details of daily operations and that Chevron had no control over the running of the forklift. The court queried Chevron:

"Well, that's what I don't understand. How does it go to the question of control?"

In response to Chevron's explanation and Chase's objection that the relevance of the evidence was outweighed by its prejudicial effect on the jury, the court continued:

"I don't see how it proves anything that you don't have [sic] already proved; namely, that Schuler [the operator of the forklift] was an employee, that Chase had a right to fire. That we all concede...."

The court denied Chevron's motion to reconsider. Chevron appeals this evidentiary ruling contending the district court misapplied Fed.R.Evid. 407 in failing to recognize the exception to permit the introduction of a subsequent remedial measure to show control. Chevron insists that the determination of the factual issues of who had the right to control and who in fact controlled the forklift is key to the jury's disposition of the question of who had the duty to the plaintiff. Mr. Hull responds

---

1. In a subsequent order, the district court granted Chevron's motion for Chase's partial indemnification of the judgment. That order has been reviewed in a related appeal. *Hull v. Chevron,* 812 F.2d 590 (10th Cir.1987).

2. The issue arose after the court granted Chase's motion in limine to prevent this line of questioning. Chevron moved for reconsideration.

that the evidence only shows Chase controlled its own employees and, in any event, the matter lies within the sound discretion of the trial court.

Fed.R.Evid. 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The justification for Rule 407 is twofold. First, as an admission of fault, the probative value of subsequent remedial measures is limited. Second, exclusion is important to foster "a social policy of encouraging people to take ... steps in furtherance of added safety." Fed.R.Evid. 407 advisory committee's note. While exclusion is mandated, it is called for *"only* when the evidence of subsequent remedial measures is offered as proof of negligence or culpable conduct." *Id.* (emphasis added). Consequently, evidence of subsequent remedial measures may be introduced for other purposes, "including ownership or control, existence of duty, and feasibility of precautionary measures, *if controverted,* and impeachment." *Id.* (emphasis added). Circumscribing these "other purposes" is relevance and probativeness. "In this sense, Rule 407 represents a balance of competing interests rather than a broad social policy directive." *Meller v. Heil Co.,* 745 F.2d 1297, 1299 n. 3 (10th Cir.), *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984).

Although Chevron insists the evidence at issue was critical to showing its lack of control of the forklift,[3] we fail to see how this issue is controverted in the first instance. During trial, Chase acknowledged not only that its employees operated the forklift but also its responsibility for hiring and firing Chase employees. Control of the forklift is not disputed. Thus, Chevron's proffered evidence would be either cumulative or trespass inferentially into the Rule 407 prohibited terrain of proof of culpable conduct. The trial court correctly excluded this evidence recognizing that the issue of actual control of the forklift was not controverted. *See Andres v. Roswell-Windsor Village Apartments,* 777 F.2d 670 (11th Cir.1985); *Hall v. American S.S. Co.,* 688 F.2d 1062, 1067 (6th Cir.1982).

### III.

Chevron complains the district court erred in refusing to declare a mistrial when, during opening argument, Chase, the third-party defendant, changed its legal theory of the case. Chevron contends the pretrial order memorialized Chase's position as an independent contractor responsible for daily drilling operations. Moreover, Chevron asserts Chase's designation of witnesses, answers to admissions, and other discovery led Chevron to believe that Chase conceded its status as an independent contractor. Chevron claims the court's failure to grant its motion for a mistrial or instruct the jury on Chase's original position made it the victim of a trial by ambush.

When Chevron moved for a mistrial after Chase's attorney completed his opening statement,[4] the district court responded, "Well, the issue is no surprise, though, is it?" In denying the motion while permit-

---

**3.** In supplemental authority, Chevron cites *Noonan v. Texaco, Inc.,* 713 P.2d 160 (Wyo.1986), for the proposition that a determination of whether an independent contractor relationship exists is a question of fact and depends on whether an employer has the right to control the details of the work on which liability is sought to be established. However, it is the application of this very principle that makes the introduction of this evidence cumulative.

**4.** Quizzically, during oral argument in this appeal, Chevron's attorney stated that Chase's change of position was not grounds for a mistrial while confirming it did not request a continuance or other relief. Neither Chase nor Chevron asked the court to modify the pretrial order.

ting Chevron to prepare an offer or instruction, the court commented:

"Many times in the trial of a case the counsel become surprised at what happens, but the issue was known to you and known to all of us. This isn't a surprise issue."

 The pretrial order is a procedural tool designed to insure the economical and efficient trial of every case on its merits without chance or surprise. *Smith v. Ford Motor Co.*, 626 F.2d 784, 795 (10th Cir. 1980), *cert. denied*, 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981). Nevertheless, while the pretrial order defines a lawsuit's boundaries in the trial court and on appeal, *American Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804, 806 (10th Cir.1977), "total inflexibility is undesirable." Fed.R. Civ.P. 16 advisory committee's note. Consequently, Rule 16 permits a party to modify or amend a pretrial order "only to prevent manifest injustice."

 Although Chevron contends Chase's abuse of the pretrial order is governed by *Smith v. Ford Motor Co.*, 626 F.2d at 784, we are unable to equate the unfair surprise and consequent prejudice found in *Smith* with the circumstances of this case. Chevron was prepared to address plaintiff's theory of the case which Chase later chose to embrace. This record does not support the granting of a mistrial as a curative for whatever problem Chase's opening statement gave Chevron. We can discern no prejudice or surprise in fact or bad faith or wilfulness in Chase's apparent change of theory. Moreover, if Chevron was really surprised, it should have moved for a continuance of the trial with sufficient support to satisfy the trial court that additional time was needed to meet the change in theory. In the absence of these factors, we find nothing to warrant a finding the district court abused its discretion in denying Chevron's motion for a mistrial. *Beissel v. Pittsburgh and Lake Erie R.R. Co.*, 801 F.2d 143, 150 (3rd Cir.1986).

## IV.

Chevron next urges the district court improperly instructed the jury on the duty Chevron owed to Mr. Hull. Chevron insists the law in Wyoming is settled that a company owes no duty to employees of an independent contractor for open and obvious dangers. The district court refused to give this instruction, offering instead Instruction 15 which provided:

Chevron, as owner and occupier of the land, has a duty of reasonable care, under all the circumstances, to take reasonable precautions to protect invitees onto the land, including employees of any independent contractors, from dangers which are foreseeable. This duty is commonly referred to as the duty to maintain safe premises.

Additionally, Instructions 16 and 17 informed the jury that, under Wyoming law, oil and gas drilling is an ultrahazardous and extrahazardous activity; and that the duty to maintain a safe place to work is, therefore, nondelegable.

Chevron would analogize this case to *Sherman v. Platte County*, 642 P.2d 787 (Wyo.1982), in which the Wyoming Supreme Court held that an owner or occupier of land or premises has no obligation to protect business invitees from known and obvious dangers resulting from natural causes.[5] Chevron contends the rough condition of the ground surrounding the well site is a natural phenomenon like the ice accumulation on which the *Sherman* plaintiff slipped.

However, the circumstances of *Sherman* are unlike those present in this case.[6] A better fit is a later case cited by the appellee, *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo.1986), in which the Wyoming Supreme Court qualified the application of *Sherman* and clarified *Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo.1986). In *Noo-*

---

5. In *Sherman v. Platte County*, 642 P.2d at 787, the plaintiff slipped and fell on ice accumulated in the parking lot of the sheriff's office where she had gone to purchase license plates.

6. *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890 (Wyo.1986), later noted that *Sherman's* broad statement of the obvious danger rule does not survive the enactment of Wyoming's law of comparative negligence.

*nan,*[7] the court had affirmed granting summary judgment in favor of Texaco on the ground that the driller was an independent contractor over whom Texaco retained no right to control work details. The *Noonan* court equated the retention of the right to control with the determination of the very existence of a duty. However, the *Jones* court distinguished the holding in *Noonan.* In *Jones,* Chevron argued that *Noonan* stood for the proposition that there is no duty running from an owner to the employee of an independent contractor who is injured while doing the job for which his employer, the contractor, was hired. However, the *Jones* court distinguished:

> *Noonan,* in fact, is not so broad. We simply applied the unremarkable rule of law that ordinarily an owner is not liable under the theory of respondeat superior for the negligence of his independent contractors. The *Noonan* case does not control when direct negligence of the owner, rather than respondeat superior is involved. Nor does it identify the exceptions to the basic rule of vicarious liability.

*Jones v. Chevron U.S.A., Inc.,* 718 P.2d at 894 n. 1 (citation omitted). *See Restatement (Second) of Torts* § 409. The *Jones* court then held that an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform. *Jones,* 718 P.2d at 896.[8]

■ In our case, the jury had to resolve the factual issue of whether the parties were governed by a principal/agent or operator/independent contractor relationship. Chevron's insistence that no duty exists thus disregards a continuing line of Wyoming authority which comprehends the existence of some duty in either relationship.

■ Moreover, Chevron ignores the fact that Wyoming law recognizes that the drilling of an oil and gas well is an ultrahazardous activity, a dangerous agency. *Pan American Petroleum Corp. v. Like,* 381 P.2d 70 (Wyo.1963). Wyoming law remains, as previously stated by this court, that the owner's duty to an invitee who may be the employee of an independent contractor is that of reasonable care under all the circumstances, "including the duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1272 (10th Cir.1982) (citations omitted); *Pan American Petroleum v. Like,* 381 P.2d at 74. The district court's instruction properly incorporated the higher standard of care adopted by Wyoming for businesses engaged in ultrahazardous activities.

■ In addition to the common law standard of care, plaintiff alleged Chevron breached a statutory standard of care set forth in 30 C.F.R. 221.18 [9] and 221.37,[10] in

---

**7.** Kevin Noonan was killed while working on an oil rig owned by Texaco, Inc. His personal representative sued Texaco, the driller, and others involved in the manufacture of some of the equipment on the rig. Summary judgment was upheld for Texaco upon the court's finding no genuine issue of material fact existed as to the relationship between Texaco and the driller. In a vigorous dissent, Justice Rose followed our decision in *Holdaway v. Amoco Production Co.,* 751 F.2d 1129 (10th Cir.1984), and argued that controverted factual issues made summary judgment inappropriate. *Holdaway* was criticized in *Noonan* for incorrectly applying the law of Wyoming. (Thomas, C.J., specially concurring).

**8.** *Jones* was later limited to cases in which only ordinary negligence, not gross negligence, is present. *Burton v. Fisher Controls Co.,* 723 P.2d 1214, 1219 (Wyo.1986).

**9.** 30 C.F.R. § 221.18 provided:
The lessee shall comply with the terms of the lease, and of the regulations in this part and any amendments thereof, and with the written instructions of the supervisor, shall take all reasonable precautions to prevent waste, damage to formations or deposits containing oil, gas or water, or to coal measures or other mineral deposits, and injury to life or property and before drilling or other operations are started shall have submitted a satisfactory bond.

**10.** 30 C.F.R. § 221.37 provided:
The lessee shall carry on all operations and maintain the property at all times in a safe and workmanlike manner, having due regard for the preservation and the conservation of the property and for the health and safety of

effect at the time the lease was executed and imposed on Chevron as the holder of this federal lease. The court instructed the jury that the violation of a statute or regulation may be evidence of negligence and proceeded to read the two federal regulations. Since the standard of care may be imposed by statute and the common law, *McClellan v. Tottenhoff,* 666 P.2d 408, 412 (Wyo.1983), and the federal standard tracks that imposed by the state, we cannot say the district court erred by including the statutory sections in its charge to the jury. To accept Chevron's contention that the regulatory sections create no duty to this plaintiff ignores the plain language "the lessee shall comply" and "the lease shall carry on" in performing all work in a workmanlike manner with "due regard for the health and safety of employees." 30 C.F.R. § 221.37.

## V.

■ Finally, Chevron asks us to review the record and find as a matter of law the district court erred in denying Chevron's motion for judgment notwithstanding the verdict. We will not undo the jury's verdict unless we are certain that the evidence so conclusively favors one party that reasonable men could not arrive at a contrary verdict. *Western Plains Service Corp. v. Ponderosa Development Corp.,* 769 F.2d 654, 656 (10th Cir.1985). Our reading of the record produces no such conviction.

AFFIRMED.

employees. The lessee shall take reasonable steps to prevent and shall remove accumulations of oil or other materials deemed to be fire hazards from the vicinity of well loca-

tions and lease tanks, and shall remove from the property or store in orderly manner all scrap or other materials not used.