Gary HITTEL, Appellant (Plaintiff),

v.

WOTCO, INC., Appellee (Defendant).

No. 99–113.

Supreme Court of Wyoming.

Feb. 16, 2000.

---

Representing Appellant: James Richard McCarty, Casper, Wyoming.

Representing Appellee: Patrick J. Murphy and Scott W. Skavdahl of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

GOLDEN, Justice.

In this case, we consider whether an owner who advises an independent contractor of safety concerns existing on the owner's premises is liable for injuries to an employee of the independent contractor. Appellant Gary Hittel (Hittel), an employee of the independent contractor, Steel Structures, Inc. (SSI), fell through a skylight on Appellee WOTCO, Inc.'s roof while repairing it and suffered serious injury. Hittel filed a personal injury suit against WOTCO; however, the district court ruled as a matter of law that WOTCO owed no legal duty to Hittel and granted summary judgment to WOTCO.

We affirm the district court's order of summary judgment.

## ISSUES

Hittel presents these issues for our review:

1. Whether the facts in the record present a genuine issue of material fact which preclude the entry of summary judgment by the trial court.

2. Whether the protection afforded to owners against injury claims by an employee of an independent contractor should extend to claims by an employee of a temporary employment service who is being used by an independent contractor.

3. Whether the facts in the record support a claim based upon the direct negligence of WOTCO.

WOTCO states the issues to be:

1. Did the district court correctly find that this owner did not retain control of the independent contractor's work or assume affirmative safety duties, on this roofing project?

2. Did the district court correctly find that this owner did not have a duty of care to the appellant?

3. Where the appellant recovered workers' compensation benefits from his contributing employer, and where the appellant then recovered a policy limits tort settlement from his controlling employer, should the owner have to pay for injuries caused by that independent contractor/controlling employee?

4. Did the district court correctly enter summary judgment for the owner?

## FACTS

WOTCO owns several buildings in Wyoming, and in 1996 decided to replace the roof on them. It retained a local engineering firm to design the new roofs and provide for construction observation. WOTCO accepted the engineering firm's proposed plans and, after receiving a bid from SSI to complete the work, awarded it with the roofing contract. The contract between WOTCO and SSI expressly stated that SSI was an independent contractor and required SSI to provide all safeguards. Before construction began, WOTCO personnel met with SSI, primarily to discuss clearance for SSI employees to enter WOTCO premises. During that meeting, WOTCO informed SSI of multiple skylights on its roof so that SSI would take precautions.

Hittel was the employee of a temporary employment agency named Trademark Personnel. Upon SSI's request that it provide a laborer for the roofing contract, Trademark sent Hittel. Trademark paid Hittel and paid premiums to the state's workers' compensation program for Hittel. SSI did not pay premiums. SSI roofed the buildings in accordance with the plans provided by the local engineering firm. Hittel concedes that SSI was an independent contractor and does not allege that WOTCO retained control over any of SSI's work.

Near the end of the roofing project, on November 14, 1996, Hittel fell through a skylight and suffered severe injuries. He was paid worker's compensation benefits and filed a personal injury suit against SSI, which was settled. Claiming that WOTCO assumed safety duties, Hittel then filed a personal injury suit against WOTCO. WOTCO filed a motion for summary judgment arguing that it had no duty of care to Hittel. It supported that motion with depositions of two SSI managers and Hittel; depositions of two WOTCO employees; an affidavit of OSHA safety expert, Steve Clegg; and the affidavit of SSI's engineer Thomas Anderson. Hittel opposed that motion with a legal memorandum but did not submit any opposing affidavits. In reply, WOTCO submitted a supplemental affidavit from Thomas Anderson.

In its decision letter of February 17, 1999, the district court found that the evidence did not establish that WOTCO retained any control over safety or any operative detail or method of work to be performed by Hittel. The district court ruled that WOTCO did not owe a legal duty to Hittel and granted summary judgment to WOTCO. This appeal followed.

## DISCUSSION

*Standard of Review*

■ Our standard of review on summary judgment is well-established. Summary judgment is not favored in negligence cases, but if the record fails to reveal any disputed issues of material fact and the movant is entitled to judgment as a matter of law, summary judgment is proper, even in a negligence case. *Abraham v. Andrews Trucking Co.*, 893 P.2d 1156, 1157 (Wyo. 1995). Whether a defendant owes a plaintiff a legal duty is a question of law which is reviewed de novo. *Id.; Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 (Wyo.1986) (quoting W. Keeton, Prosser and Keeton on Torts § 37 at 236 (1984)).

*Existence of Duty*

We have adopted the general proposition set forth in the Restatement (Second) of Torts § 409 (1965), stating "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo.1988). See also *Noonan v. Texaco, Inc.*, 713 P.2d 160, 164–67 (Wyo. 1986). *Jones v. Chevron, U.S.A.* recognized an exception to that general rule based on the Restatement (Second) of Torts § 414 (1965), and held that "the owner of the workplace, who employs an independent contractor and retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the [independent] contractor was hired to perform." *Jones*, 718 P.2d at 896; *Hill*, 765 P.2d at 1349.

Hittel contends that WOTCO assumed affirmative safety duties when it involved itself in the decision not to use safety harnesses and tie-offs, mark the skylights, or place a barricade or cover over them. He relies on the following conversation as described by SSI employee Thomas Anderson to establish that WOTCO personnel were involved in discussions concerning safety on the roof.

Q. Did you ever talk with the folks at WOTCO as to whether they would be involved at all with respect to safety on the job site?

A. Yes. I visited with them. They visited with me concerning what we ought to do and—

Q. Can you tell me any conversations like that you can remember today?

A. I guess the major one we decided, looking at the project and the way it was laid out, we—I don't know if you had gone through how the project worked.

Q. Well, we got the sketch, which gives us kind of a rough idea.

A. Anyway, the majority of the project was bounded by ridge lines. It was kind of a closed area to start with. And we discussed that inside the ridge lines on the interior of the building, that we would just basically make everybody acquainted with the hazards of working in the area, that there were skylights that weren't to be walked on. And inside that area, we weren't going to make any major effort for tie-offs and things like that because of the slope. You were just going to slide to a flat area.

Q. Who was it from WOTCO that got involved in those discussions?

A. Well, I visited with Jamie Gibson.

Q. And do you know what his position was at WOTCO?

A. Purchasing agent, I believe.

Q. Did he actually get up on the roof with you?

A. Yes.

Q. When you were talking about the skylights and so forth?

A. Yes.

Q. Anybody else at WOTCO that got up and helped you make these decisions?

A. I think Tony Hess was involved. I believe he's an engineer for them or something.

\* \* \*

Q. You do agree though, that you and Mr. Gibson and Mr. Hess recognize that the skylights shouldn't be walked on?

A. Correct.

Q. And I presume that's because you knew they wouldn't support human weight, is that correct?

A. Correct.

Q. Did you talk about marking those or identifying them in some way, putting a barricade around them or a cover over them?

A. Yes. We had visited about doing that. And first, when we started the job, I got everybody together, and we had what you call a tailgate meeting, I thought is what you'd call it.

Hittel claims that Anderson's testimony establishes factual issues concerning whether

this owner had assumed affirmative duties as to safety which should be submitted to the jury.

WOTCO contends that Anderson's supplemental affidavit clarifies his testimony and eliminates any factual issues. That affidavit states in pertinent part:

2.... I am submitting this Supplemental Affidavit ... to clarify several matters in some of Richard McCarty's 10/28/97 deposition questions and my sworn answers to Mr. McCarty's questions.

3. I used the word "we" in my deposition answers that appear on page 4, lines 12–21 and again at page 6, lines 18–21. Those highlighted deposition pages are attached to this Supplemental Affidavit. My 11/24/98 Affidavit is also attached hereto for the completeness' sake and the Court's convenience.

4. From the context of the deposition questions asked by Mr. McCarty, one might conclude that I was talking about Steel Structures' representatives *and WOTCO representatives* in those two deposition answers. That was *not* my intention, and it is *not* my testimony. When I used the word "we" at those places in my deposition, I was only speaking about myself, Steel Structures' superintendent Paul Lau, and several other Steel Structures' employees. I was not suggesting, inferring, or intending to say that anyone with WOTCO, Inc. ever attended or was ever involved in any tailgate meetings, and I was not suggesting, inferring or intending to say that anyone from WOTCO, Inc. ever discussed, or helped plan, Steel Structures' strategy to not 'tie off', or use fall protection, inside the ridge lines on the interior sides of these WOTCO roofs.

5. This is what happened. Early in this project, Paul Lau and I discussed, and decided, between ourselves, that Steel Structures would not 'tie off', or use fall protection, inside the ridge lines that sloped to a cricket or trough. Conversely, Paul Lau and I also discussed, and decided, between ourselves, that Steel Structures would 'tie off', or use fall protection for its employees, in those instances where—as here—the roof sloped to the exterior of a building. It was our intent, and plan, to protect our employees from falling off a roof onto the ground. Paul Lau and I also discussed the existence of all these skylights on WOTCO's roof, and we decided, between ourselves, that we would warn our Steel Structures' employees not to ever step onto any of these skylights.

6. Thereafter, I personally took plaintiff Gary Hittel up on these roofs and showed him these skylights. I specifically warned Gary Hittel to never step on these skylights.

7. I remember the pre-construction meeting I attended with WOTCO's representatives, Jamie Gibson and Kurt Vircks. The WOTCO people warned me to be careful of those skylights, and not to step on them. I told WOTCO that "we" (Steel Structures) would take care of it. As far as the outside slopes were concerned, I remember telling someone from WOTCO that we (Steel Structures) planned to use fall protection [for some areas], but we would not use any fall protection [for other areas.]. The WOTCO representative did not voice any objection, or concern, with my stated plan about fall protection. In fact, there was no any further discussion about fall protection. All of the discussion about tie-off, and fall protection, started and ended with me. WOTCO was not involved in Steel Structures' decision to not use safety harnesses and/or tie-offs on the interior slopes. And WOTCO was not involved in Steel Structures' decision to use safety harnesses, or tie-offs, on the exterior slopes. WOTCO was *informed,* by me, of Steel Structures' intent and plan, but WOTCO did not modify, affirm, provide input, reject or retain any control over Steel Structures' safety plan for these roofs.

As the movant for summary judgment, WOTCO was required to put forth evidence that WOTCO did not retain the right to direct SSI's construction on the roof and show that it did not assume affirmative duties for safety. *Hill,* 765 P.2d at 1350; *Jones,* 718 P.2d at 896. Deposition testimony, affidavit testimony, and the contract be-

tween WOTCO and SSI factually established that assertion.

The burden then shifted to Hittel to present the district court with facts refuting WOTCO's initial and reply summary judgment showing. *Hill,* 765 P.2d at 1350. Hittel highlighted Anderson's deposition testimony of the discussion that took place during a pre-construction meeting; however, the same witness that he relies upon has provided clarification testimony that eliminated any factual issue as to whether WOTCO assumed affirmative safety duties for that work. Hittel failed to refute WOTCO's summary judgment showing, and no genuine issue of material fact existed. We affirm the district court decision that, as a matter of law, WOTCO did not owe a legal duty to Hittel.

### Temporary Employee Status

■ In his second issue, Hittel contends that WOTCO owes a legal duty to him because SSI did not pay worker's compensation coverage premiums for him. He claims that his status as a temporary employee for whom an independent contractor has not paid worker's compensation coverage is comparable to that of an innocent bystander and he is entitled to the same protections of an innocent bystander. The differences between the protections afforded to an innocent bystander and the employee of an independent contractor were discussed in *Jones v. Chevron,* where we observed:

> The employee, on the other hand, is covered by worker's compensation even if the contractor is insolvent. The owner should not have to pay for injuries caused by the contractor when the worker's compensation system already covers those injuries The owner "has in a sense already assumed financial responsibility for the injuries" because the independent contractor passes along his worker's compensation costs to the owner.

*Jones,* 718 P.2d at 899 (citation omitted). In this case, Trademark paid worker's compensation coverage premiums for Hittel, who did receive benefits. Additionally, his personal injury suit against SSI resulted in a settlement of their full liability insurance policy limit. It can safely be assumed that all costs

associated with worker's compensation and insurance coverage were passed along to WOTCO, and in these particular circumstances we believe that the *Jones* rule remains applicable despite Hittel's status as a temporary employee.

### Direct Negligence

■ Finally, Hittel contends that a legal duty should be imposed upon WOTCO because it knew of the dangers posed by the skylights and took no precautions. He relies upon the rule set forth in *Hull v. Chevron, U.S.A., Inc.,* 812 F.2d 584, 589 (10th Cir. 1987), that an owner's duty to an invitee who may be the employee of an independent contractor is that of reasonable care under the circumstances.

WOTCO claims that Hittel's reliance upon *Hull* is misplaced. It quotes the following to show that *Hull* approved a jury instruction incorporating an enhanced duty of care for an owner engaged in ultra hazardous activities.

> Moreover, Chevron ignores the fact that Wyoming law recognizes that the drilling of an oil and gas well is an ultra hazardous activity, a dangerous agency. *Pan American Petroleum Corp. v. Like,* 381 P.2d 70 (Wyo.1963). Wyoming law remains, as previously stated by this court, that the owner's duty to an invitee who may be the employee of an independent contractor is that of reasonable care under all the circumstances, "including the duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1272 (10th Cir.1982) (citations omitted); *Pan American Petroleum v. Like,* 381 P.2d at 74. The district court's instruction properly incorporated the higher standard of care adopted by Wyoming for businesses engaged in ultrahazardous activities.

*Hull,* 812 F.2d at 589. In those cases that do not involve ultrahazardous activities, the owner does not have a duty of care to employees of an independent contractor unless that owner "retains the right to direct the manner of an independent contractor's per-

formance or assumes affirmative duties with respect to safety." *Jones*, 718 P.2d at 896. As just discussed, Hittel's claim that WOTCO assumed affirmative duties with respect to safety is unsupported by evidence, and we uphold the district court ruling that WOTCO did not owe Hittel a legal duty as a matter of law.

The district court's order of summary judgment is affirmed.