2004 WY 97

**Judith L. FRANKS, Personal Representative of the Estate of Wayne Franks, Deceased, Appellant (Plaintiff),**

v.

**INDEPENDENT PRODUCTION COMPANY, INC., a Colorado corporation, d/b/a Independent Production Company; R & J Production; and Jack Andregg, individually, Appellees (Defendants).**

No. 02–269.

Supreme Court of Wyoming.

Aug. 24, 2004.

Representing Appellant: Philip A. Nicholas and Julie M. Yates of Anthony, Nicholas, Tangeman & Yates, LLC, Laramie, WY. Argument by Mr. Nicholas.

Representing Appellee Independent Production Company, Inc.: Patrick J. Murphy, Scott W. Skavdahl, and Jason A. Neville of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument by Mr. Murphy.

Representing Appellees R & J Production and Jack Andregg: Paul J. Drew of Drew & Carlson, P.C., Gillette, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Judith L. Franks (Franks), personal representative for the estate of Wayne Franks, appeals from the grant of summary judgment to Appellees in an action for wrongful death. Franks brought this action after her husband, Wayne Franks (Wayne), died from injuries he sustained when well casing was dropped on him at a coal bed methane well site leased and operated by Independent Production Company (IPC). Franks contends that the trial court wrongly granted summary judgment after determining that Appellees owed no duty of care based on the facts of the case.

[¶ 2] We affirm the grant of summary judgment to Appellees.

### ISSUES

[¶ 3] Franks presents the following statement of the issues for our review:

1. Whether the district court erred in granting summary judgment to defendants, Independent Production Company, Inc., R & J Production Services, and Jack Andregg on either of the following bases:

   a. Whether IPC, R & J Production, and Jack Andregg each owed a duty of reasonable care to Wayne Franks under the facts of this case.

   b. Whether the nature and location of the activity being performed imposed independent, non-delegable duties on IPC, and its Agents R & J Production and Jack Andregg.

   c. Whether IPC, R & J Production and Jack Andregg owed duties of care to Wayne Franks either because they exercised control over the activity resulting in his death, or because he was an "other" as referred to in the Restatement (Second) of Torts §§ 413, 416, and 427.

2. Whether stepchildren, dependent on the decedent similar to that of biological or adopted children, can recover under Wyoming's Wrongful Death Act.

Appellee IPC presents no statement of the issues. Appellees R & J Production and Jack Andregg present the following:

1. Whether the district court properly granted summary judgment in favor of the defendant-appellees R & J Production and Jack Andregg on the basis that the employer of an independent contractor is not liable for physical harm to another caused by the independent contractor.

2. Whether stepchildren are persons for whose benefit a wrongful death action may be brought.

### FACTS

[¶ 4] IPC operated a Campbell County coal bed methane well site leased from the United States Bureau of Land Management. IPC hired R & J Production to supervise all development, production, and drilling operations on the well site. R & J was a general partnership informally created by Rod Hicks and Jack Andregg, the only two employees of R & J. IPC also contracted with A–1 Drilling, Inc., to drill its coal bed methane well.

[¶ 5] Colorado Tubular was called, and an order placed for well casing for delivery to the well site. Cole's Construction Services, Inc., (Cole's), Wayne's employer, was hired by Colorado Tubular to make the delivery, and Cole's directed Wayne to deliver the load of well casing to IPC's well site. On March 4, 2000, after Wayne arrived at the well site, Justin Browning, an A–1 employee, used a backhoe to unload the well casing. Each length of well casing measured seven inches in diameter, forty feet in length, and weighed about 680 pounds. Wayne climbed up on the bed of the trailer to assist Browning, the backhoe operator, with the unloading. During the process, Wayne fell to the ground and several casing rolled off the end of the backhoe clamp forks onto Wayne, crushing him. An ambulance arrived, but Wayne died on the way to the hospital.

[¶ 6] Wayne had no children of his own but had stepchildren from two marriages, one of whom he had adopted and three stepchildren from his second marriage, all of whom are parties to the suit brought by Franks against IPC, R & J Production, Jack Andregg, A–1 Drilling Inc., Justin Browning, and John Does I, II, and III (Appellees). Appellees filed a motion for partial summary judgment on the claims brought on behalf of

Wayne's stepchildren. Determining that Wyo. Stat. Ann. § 2–4–101(c) (LexisNexis 2003)[1] governs who may bring a wrongful death action, the trial court determined that the plain language precluded an action by stepchildren, granted the Appellees' motion and dismissed all claims filed on behalf of the stepchildren. Summary judgment was also granted to IPC, R & J, and Jack Andregg. Later, Franks settled with A–1 and Justin Browning, and the case was dismissed although Franks reserved determination of whether Justin Browning was IPC's loaned employee. This appeal followed.

## DISCUSSION

### Parties' Contentions

[¶ 7] Franks contends that the trial court erred when it decided on the basis of *Noonan v. Texaco, Inc.*, 713 P.2d 160 (Wyo.1986), and its progeny,[2] that Appellees were entitled to summary judgment on the basis that "an employer of an independent contractor is not liable for physical harm to another caused by a contractor unless Plaintiff's case falls within one of two exceptions." Franks contends that the facts of this case are not governed by the line of independent contractor cases cited by the trial court because IPC did not contract the unloading of well casing to any of its independent contractors but retained that obligation itself although it delegated that actual performance to its agent, Jack Andregg, and his partnership, R & J. Franks contends that Justin Browning's role was that of a borrowed servant and not that of an employee of an independent contractor. Second, Franks contends that a non-delegable duty was imposed on IPC, as the operator of a federal oil and gas lease, and its

agents on the bases of (1) federal and state regulations, and (2) the extrahazardous nature of the work being performed by IPC. Finally, Franks asserts that even if this case is analyzed under the independent contractor line of cases, IPC, R & J, and Jack Andregg still owed duties of reasonable care to Wayne because Wayne was not the employee of a contractor with whom IPC contracted the unloading obligation, because IPC assumed affirmative safety duties and controlled A–1's and Justin Browning's work at the time of Wayne's injuries, and, finally, because Wayne was an "other" as referred to in Restatement (Second) of Torts §§ 413, 416, and 427 (1965).

[¶ 8] Franks' multiple arguments attempt to impose a duty of care upon IPC and its agent. IPC, R & J, and Andregg contend that this is a "no duty" case for which summary judgment was properly granted. Each of Franks' contentions is addressed in the following discussion, and we ultimately conclude that no duty of care existed for the Appellees. Summary judgment was properly entered.

### Standard of Review

[¶ 9] The elements of a prima facie case of negligence are duty, breach, causation and damages. *Garnett v. Coyle*, 2001 WY 94, ¶ 24, 33 P.3d 114, ¶ 24 (Wyo.2001). Summary judgment is not favored in negligence actions, since such actions by their nature are factually dependent. *Id.*, ¶¶ 4, 6. Accordingly, summary judgment in negligence actions is subject to more exacting scrutiny. *Id.*; *Woodard v. Cook Ford Sales, Inc.*, 927 P.2d 1168, 1169 (Wyo.1996). On appeal, we review summary judgment de

---

1. (c) Except in cases above enumerated, the estate of any intestate shall descend and be distributed as follows:

(i) To his children surviving, and the descendents of his children who are dead, the descendents collectively taking the share which their parents would have taken if living;

(ii) If there are no children, nor their descendents, then to his father, mother, brothers and sisters, and to the descendents of brothers and sisters who are dead, the descendents collectively taking the share which their parents would have taken if living, in equal parts;

(iii) If there are no children nor their descendents, nor father, mother, brothers, sisters, nor descendents of deceased brothers and sisters, nor husband nor wife, living, then to the grandfather, grandmother, uncles, aunts and their descendents, the descendents taking collectively, the share of their immediate ancestors, in equal parts.

2. *Hittel v. WOTCO, Inc.*, 996 P.2d 673, 676 (Wyo. 2000); *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 411 (Wyo.1997); *Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo.1988); *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 (Wyo.1986).

novo and do not defer to the district court's ruling. *Act I, LLC v. Davis*, 2002 WY 183, ¶ 9, 60 P.3d 145, ¶ 9 (Wyo.2002). Using the same standards and materials used by the district court, we examine the record from the vantage point most favorable to the non-movant party and that party receives the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* Summary judgment is appropriate only when no genuine issues of material fact exist and the prevailing party is entitled to judgment as a matter of law. *Id.;* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. *Act I,* ¶ 9. If the movant carries its burden of establishing a prima facie case for summary judgment, the party opposing summary judgment must come forward with specific facts to demonstrate that a genuine issue of material fact does exist. *Garnett,* ¶ 4. General allegations and conclusory statements are not sufficient. *Id.,* ¶ 5.

*Duty for Employer/Independent Contractor Relationship*

[¶ 10] We have defined an independent contractor as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." *Combined Ins. Co. of America v. Sinclair,* 584 P.2d 1034, 1043 (Wyo.1978) (quoting *Lichty v. Model Homes,* 66 Wyo. 347, 211 P.2d 958, 967 (Wyo.1949)). Generally, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Hittel v. WOTCO, Inc.,* 996 P.2d 673, 676 (Wyo.2000) (citing Restatement (Second) of Torts § 409 (1965)); *Hill v. Pacific Power & Light Co.,* 765 P.2d 1348, 1349 (Wyo.1988); *see also, Noonan,* 713 P.2d at 164–67. Two limited exceptions to non-liability have been recognized in our previous decisions: (1) workplace owner/employer (owner) exercises controlling and pervasive role over the independent contractor's work; or (2) owner assumes affirmative safety duties. *Hittel,* 996 P.2d at 676; *Jones v. Chevron,* 718 P.2d 890, 896 (Wyo.1986). The first exception does not apply unless the employer (owner) has the right to control the details of the work. *Noonan,* 713 P.2d at 164. "The owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work—without changing the relationship from that of owner and independent contractor or the duties arising from that relationship." *Id.* at 165. We have reaffirmed this rule in *Stockwell v. Parker Drilling Co., Inc.,* 733 P.2d 1029 (Wyo.1987), and *Ramsey v. Pacific Power & Light,* 792 P.2d 1385, 1388 (Wyo.1990).

[¶ 11] To determine whether the nature and extent of the control present is sufficient to impose liability, both applicable contractual provisions and the actual exercise of control are relevant. *Jones v. Chevron,* 718 P.2d at 896. Franks contends that Jack Andregg, as IPC's agent, exercised pervasive control over the site daily by stopping work and over Justin Browning and Wayne Franks on the day of the accident; however, our review of the record indicates that, under the respective oral or written contracts, A–1 and R & J were the independent contractors employed by IPC, and Jack Andregg and Justin Browning were employees of the respective independent contractors. "Agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and consent. There is no presumption that an agency exists." *Krier v. Safeway Stores 46, Inc.,* 943 P.2d 405, 411 (Wyo.1997) (quoting *True v. Hi–Plains Elevator Machinery, Inc.,* 577 P.2d 991, 999 (Wyo.1978)). "In Wyoming, the overriding element in determining whether one is an employee or an independent contractor is dependent on whether the employer has a right to control the details of the work whereby liability is sought to be established." *Krier,* at 411 (quoting *Noonan,* 713

P.2d at 164). Andregg and IPC have established an employer/independent contractor relationship; however, even if Andregg was IPC's agent, we disagree that the record shows that Andregg exceeded the scope of control allowed under *Noonan* by his daily actions on the well site that would allow duty to be imposed against IPC or Andregg and R & J. The evidence shows that Andregg ordered use of the backhoe to unload the casing and then sat in his truck as Justin and Wayne proceeded and had nothing else to do with the unloading until the accident. Andregg can require that employees of other independent contractors begin working without giving rise to liability. *Noonan*, 713 P.2d at 165–67.

[¶ 12] Franks further contends that a tort duty was created because IPC's drilling contract with A–1 provided that IPC would unload well casing, and IPC delegated that obligation to Jack Andregg, who then arranged for A–1's backhoe to unload casing brought by Wayne. The drilling contract contained an Exhibit A that had a list of the equipment, materials and services to be furnished by A–1 and a separate list of equipment, materials and services to be furnished by IPC. Our review of the record shows that IPC agreed to allow A–1 to invoice it for use of its equipment at IPC's request by a provision that stated: "Backhoe: To be invoiced at $45.00/hour when used at Operator's convenience to (a) [u]nload, move or handle casing." Another provision detailed how much A–1 could bill IPC for labor when unloading casing. IPC contends that the drilling contract did not provide that it would unload casing and this provision was not a leasing arrangement separate and apart from A–1's obligations for drilling the well, but merely a provision governing invoicing procedures. Our review of the drilling contract shows that it plainly states that A–1 is an independent contractor who would drill and case to depths specified in the contract. The contract did not provide that A–1 would be paid one set amount for this service. Instead, the contract contained extensive lists of equipment, materials, and services that were individually priced. We found no language assigning unloading casing to a particular party and none of the parties claim that such language exists. The complete text of the provision in Exhibit A allows invoicing for use of the backhoe to "[u]nload, move or handle casing;" "[d]ig more than one (1) drilling pit;" "[b]ackfill drilling pits upon completion of drilling;" and "[a]ny use at operator's request other than drilling of first drilling pit." We must agree with Appellees that the plain language of the provision read in the context of the whole contract provides pricing for services and was not a statement that IPC was responsible for unloading well casing. *See Massengill v. S.M.A.R.T. Sports Medicine Clinic, P.C.*, 996 P.2d 1132, 1135 (Wyo. 2000).

[¶ 13] Franks contends that IPC's agent, Jack Andregg, conducted frequent safety meetings and frequently shut down the well site for safety reasons and by doing so assumed affirmative safety duties with the result that all Appellees owed a duty of care to Wayne. Our review shows, however, that Andregg did not direct Justin or Wayne in the performance of their duties for unloading well casing and no genuine issue of fact exists as to whether Andregg was an independent contractor or assumed affirmative safety duties for the unloading of the casing. Andregg, as an employee of R & J, served as a site supervisor within the parameters set forth in *Noonan*, and no duty of care was created.

[¶ 14] Franks also contends that a tort duty was created because the well casing was delivered under the Uniform Commercial Code (UCC) by IPC's order and the UCC requires that the buyer furnish suitable facilities for the receipt of goods under Wyo. Stat. Ann. § 34.1–2–503(a)(ii). Although the UCC provision probably governs the relationship between a buyer and seller, no authority is provided that application of the UCC to IPC as a buyer is evidence that IPC retained the obligation for unloading well casing. We find the UCC inapplicable to that question. In this case, Justin Browning, the employee of an independent contractor, A–1 Drilling, and Wayne Franks, as the employee of a vendor, Cole's, unloaded the well head casing with A–1's backhoe. Under IPC's contract with A–1, IPC would be billed a certain amount per hour for this service as

part of the drilling services. Under these circumstances, the employer/independent contractor relationship was maintained and IPC had no duty of care to Wayne under these asserted contractual or statutory provisions. Jack Andregg, employee of another independent contractor, R & J, ordered the unloading to begin; however, this control is not pervasive within the meaning of *Noonan,* and this is not an action for which liability arises for Andregg and his partnership company or for his employer, IPC.

*Applicability of Business Invitee Principles*

[¶ 15] Franks next contends that a duty of care is imposed on IPC apart from the protections offered by our employer-of-independent-contractor line of authority. She asserts that Wayne was a business invitee on IPC's leased premises and Justin Browning's negligence created a foreseeable unsafe condition of the premises that caused Wayne's death. She relies upon *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982), which held that under Wyoming's common law, "[a]n independent contractor's employee who goes on the owner's premises is an invitee to whom the owner may be liable for injury caused by an unsafe condition of the premises." *Id.* at 1272. In *Ruhs,* Kyle Ruhs was employed by Wright's Tree Service, Inc.; Wright's had contracted with PP & L to trim trees around PP & L's electrical lines. While doing this trimming, Ruhs was electrocuted and severely injured. In the action that followed, summary judgment was granted for PP & L under the rule that it owed no duty to its independent contractor's employees. The Tenth Circuit reversed upon evidence showing that PP & L had been negligent by failing to de-energize the power lines before Ruhs began working near them in violation of the National Electrical Safety Code. *Ruhs,* 671 F.2d at 1274. Determining that PP & L owed Ruhs a duty of care as an invitee, and finding that a jury could determine that PP & L's own negligence had caused Ruh's injuries, the Tenth Circuit remanded for trial. *Id.* Franks now contends that *Ruhs* can be applied to the facts of this case, while IPC contends that no direct negligence claim is permitted against the employer of an independent contractor whose employee injures the employee of another independent contractor. The rule in *Ruhs* originally was developed by our own precedent, *Pan American Petroleum Corp. v. Like,* 381 P.2d 70 (Wyo.1963), and remains law today. *Hittel,* 996 P.2d at 678. The precise question is the direct negligence of IPC; an issue of direct negligence is not applicable to Andregg or R & J Production. Franks provides no authority that this theory applies to Andregg and R & J Production as an owner or possessor of the land, and we do not consider its application to them.

[¶ 16] With the exception of trespassers, we impose a duty of reasonable care under the circumstances upon an owner or possessor for all other entrants upon land. *Clarke v. Beckwith,* 858 P.2d 293, 296 (Wyo. 1993). Wyoming law recognizes that the drilling of an oil and gas well is an ultrahazardous activity, a dangerous agency. *Pan American Petroleum Corp.,* 381 P.2d at 73–74. However, Wyoming law remains, as previously stated by this Court, that the owner's duty to an invitee who may be the employee of an independent contractor is that of reasonable care under all the circumstances, "including the duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." *Ruhs,* 671 F.2d at 1272; *Hittel,* 996 P.2d at 678; *see also, Pan American Petroleum Corp.,* 381 P.2d at 74. In *Hittel,* we limited the application of *Ruhs* and *Pan American* to ultrahazardous activity. 996 P.2d at 678–79. Franks contends that *Hull v. Chevron,* 812 F.2d 584, 588–89 (10th Cir. 1987), established the rule that ultrahazardous activities create a non-delegable duty of the owner to maintain a safe workplace. IPC contends that offloading well casing is not an ultrahazardous or abnormally dangerous activity but does not address *Hull's* application.

[¶ 17] In *Hull,*

John C. Hull, an employee of Chase Drilling Company (Chase), was assisting two co-employees in unloading and moving drill collars, 8,000 pound cylinders utilized around the drill bit. The low man on the totem pole or "worm" in oil field parlance,

Mr. Hull was positioning certain racks onto which the drill collars were temporarily being placed when one of the drill collars rolled off the tines of the forklift and onto his right leg, seriously injuring it.

Mr. Hull filed suit in the United States District Court for the District of Wyoming seeking damages for this injury against his employer, Chase, and the lessee, Chevron, which had hired Chase to drill the well. Pursuant to the Wyoming Workers' Compensation Act, the district court dismissed the action against Chase. In an amended complaint, Mr. Hull then alleged in three causes of action for negligence, strict liability, and culpable negligence that Chevron (1) had a nondelegable duty in an ultrahazardous activity to maintain a safe working environment; (2) was negligent in failing to supervise the proper operation of the forklift which it had leased and placed on the site; (3) had failed to maintain a smooth and level terrain around the rig; (4) retained control of the drilling operations and, thus, was vicariously liable for the negligent acts of Chase's employees; and (5) owed Hull a duty of care as a third-party beneficiary of Chevron's federal lease which imposes certain safety requirements on oil and gas operators.

During the six-day trial, the jury heard testimony from Chase and Chevron employees, various safety and oil and gas experts, and medical and rehabilitation specialists. Mr. Hull sought to prove that under the particular day rate contract governing the relationship between Chase and Chevron, Chevron retained the right to control and direct the entire drilling operation. In defense, Chevron attempted to establish Chase's role as an independent contractor with primary control over the details of the drilling operation, Chase's negligence in failing to supervise its forklift operator who was alleged to have used amphetamines on the morning of the accident, and the plaintiff's negligence and contributing drug use. As a third-party defendant, Chase abandoned its pretrial contention that it was an independent contractor and put on evidence to underscore its theory that the "company man," Chev-

ron's employee, Mr. Bobby Haynes, directed and supervised the drilling operation.

In returning a verdict for the plaintiff, the jury found by a preponderance of the evidence that Chevron and Chase were governed by a principal/agent, not operator/independent contractor, relationship.

812 F.2d at 585–86.

[¶ 18] Thus, *Hull* is distinguishable from this case where no genuine dispute exists that A–1 was an independent contractor. Franks cannot establish the requisite principal/agent relationship required to proceed under a theory of non-delegable duty should we decide that rule existed. By contract, IPC and A–1 agreed upon an independent contractor relationship and while that fact is not definitive, neither IPC nor Andregg exercised the requisite control over the well site required by *Noonan* to impose liability on IPC.

*Borrowed Servant Theory*

[¶ 19] Franks contends that Justin Browning was borrowed by IPC's agent, Jack Andregg, to perform unloading duties usually controlled by Andregg and, under the borrowed servant theory, all Appellees are now liable for Justin's negligence. Appellees contend that Franks is improperly raising this issue for the first time on appeal; however, in her brief in opposition to summary judgment, Franks specifically cited to the provision in the Restatement (Second) of Agency § 227 which governs borrowed servant. We will, therefore, consider the issue. Appellees also contend that the law prohibits an employee from serving two employers at the same instant and because Franks has accepted a settlement from A–1 on the theory that Browning was its employee, judicial estoppel does not permit her to now assert differently. In reply, Franks contends that any consideration of a settlement agreement to resolve this specific issue would be improper and then she quotes the settlement agreement as proof that she reserved the issue of whose employee Browning was at the time of the accident. We need not decide the propriety of either parties' actions since we have determined that Appellees exercised no control over Browning's actions in unload-

ing casing and, therefore, under the relevant law, we can decide as a matter of law that Browning was not a borrowed servant of any of the Appellees. *See Franks v. Olson,* 975 P.2d 588, 594 (Wyo.1999).

[¶ 20] According to the "borrowed servant" doctrine,

> when one employer provides an employee to another employer, the employee becomes the "borrowed servant" of the second employer for that particular transaction. If the second employer exercises control over the "borrowed servant," the second employer assumes liability for the activities of that borrowed employee, and the original employer is not liable for any of that employee's conduct. *Blessing v. Pittman,* 70 Wyo. 416, 251 P.2d 243, 246–47 (1952); 27 Am.Jur.2d *Employment Relationship* § 462 (1996). In determining which employer must assume liability, the court looks to the dual factors of who controls the employee and whose business the employee is furthering at the time of the accident. *Blessing,* 251 P.2d at 247. Under our law, however, the primary test to establish the existence of employment is the right of control of the alleged employer. *Claims of Naylor,* 723 P.2d 1237, 1240 (Wyo.1986) (*quoting Fox Park Timber Co. v. Baker,* 53 Wyo. 467, 84 P.2d 736, 743 (Wyo.1938)).

*Franks,* 975 P.2d at 593. The factor of whose business the employee was furthering is not helpful in this case. A–1's business consisted of providing personnel to perform work for IPC. When Browning was engaged in the performance of his duties at the well site, he necessarily was furthering and doing the business of both employers. *See id.* (citing *Blessing,* 251 P.2d at 247). Under these circumstances, the primary test to apply is the right of control test. Franks contends that the "right of control" test supports her position because IPC was responsible for unloading casing and Andregg controlled Browning as he used the backhoe to unload. Our preceding discussion has determined that the evidence does not establish these facts and, under that right of control test, Browning was A–1's employee and not a borrowed servant.

*Duty Imposed by Regulations*

[¶ 21] Franks next contends that regulations applied to IPC as a well operator by virtue of its BLM lease and OSHA authority that imposed a duty of care on IPC. While we agree that an applicable statute or regulation may confirm a duty of care based upon the relevant common law governing employer/independent contractor relationships, it cannot impose a duty beyond it. Without a showing of pervasive control or an assumption of safety duties, the regulations do not create a duty of care. Here, none is shown.

*"Other"*

[¶ 22] Franks next contends that because Wayne was the delivery person for a supplier, not the employee of an independent contractor, he was an innocent third party invitee at the well site. She recites Restatement (Second) of Torts §§ 413, 416, and 427 (1965) as providing for a duty of care by the employer of independent contractors to "others" under certain conditions. Sections 413 and 416 require a finding that there was a peculiar unreasonable risk of physical harm or a peculiar risk of physical harm to others. There is no evidence of any peculiar risks in this case. Also, it does not appear that the term "others" includes the employees of the independent contractor; rather, it refers to the general public or others who have no relationship to the independent contractor. *Stockwell,* 733 P.2d at 1031 (citing *Jones v. Chevron,* 718 P.2d at 899, 901). By contending that the hazardous work of unloading casing created a peculiar or special risk of harm, Franks asserts that IPC owed Wayne a duty of care although no contractual or fiduciary duties existed between IPC and Cole's. Wayne was on the well site to provide a specific service for Cole's, and he died in the performance of that service. He was not a bystander, and, therefore, not an "other" within the meaning of these Restatement provisions.

[¶ 23] Restatement (Second) of Torts §§ 416 and 427 simply restate the time-honored rule that an owner cannot delegate to an independent contractor the duty to

protect others from "inherently dangerous" activities conducted on the owner's land. *See* W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 71, at 512–15 (5th ed.1984). Section 416 states:

> *Work Dangerous in Absence of Special Precautions*
>
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Similarly, § 427 states:

> *Negligence as to Danger Inherent in the Work*
>
> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Many courts have applied the "inherently dangerous" exception, as synthesized in §§ 416 and 427, when bystanders unconnected with the work are the "others" who are injured. But most jurisdictions that have decided the issue have refused to apply the exception when an employee of the contractor is the injured party. *Jones v. Chevron,* 718 P.2d at 899 (citing *Tauscher v. Puget Sound Power & Light Company,* 96 Wash.2d 274, 635 P.2d 426, 429 and n. 2. (1981)).

> There are several good reasons for this view. First, if a bystander is injured by the negligence of a financially irresponsible contractor, the owner may be the bystander's only source of recompense. The by-stander is a totally innocent third party having no involvement in the work; and, if it is inherently dangerous and likely to cause harm, the owner undertaking the work should be responsible for the harm. The employee, on the other hand, is covered by worker's compensation even if the contractor is insolvent. The owner should not have to pay for injuries caused by the contractor when the worker's compensation system already covers those injuries.

*Jones v. Chevron,* 718 P.2d at 899 (citing *Sloan v. Atlantic Richfield Company,* 552 P.2d 157, 160–61 (Alaska 1976)). The owner "has in a sense already assumed financial responsibility for the injuries" because the independent contractor passes along his worker's compensation costs to the owner. *Jones,* at 899 (citing *Tauscher,* 635 P.2d at 430; *Eutsler v. United States,* 376 F.2d 634, 636 (10th Cir.1967)). Under *Jones,* Wayne was connected with the work at hand and cannot be considered an "other" for the benefit of these provisions.

*Stepchildren*

[¶ 24] In *Butler v. Halstead,* 770 P.2d 698, 700 (Wyo.1989), this Court held that the persons for whose benefit a wrongful death action is brought are all of those persons identified in Wyo. Stat. Ann. § 2–4–101. That statute does not specify stepchildren. Franks invites us to expand the class to include stepchildren; however, we need not consider that issue at this time since this action will not be reversed and remanded for trial.

[¶ 25] The order of summary judgment is affirmed.