**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 11 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

GREGG C. HJELLE,

      Plaintiff - Appellant,

    v.

MID-STATE CONSULTANTS, INC.,
a Utah corporation,

      Defendant - Appellee.

No. 03-8085

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 00-CV-230-J)**

George Santini of Ross, Ross & Santini, LLC, Cheyenne, Wyoming, for Plaintiff - Appellant.

Bruce S. Asay of Associated Legal Group, LLC, Cheyenne, Wyoming, for Defendant - Appellee.

Before **MURPHY** , **ANDERSON** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

      Plaintiff Gregg Hjelle, an employee of Ayrcom Contracting, Inc., was seriously injured when a large chunk of frozen dirt struck him during the

backfilling of the trench in which he was working. At the bench trial of this diversity suit, *see* 28 U.S.C. § 1332, he argued that Defendant Mid-State Consultants, a third-party independent contractor, is liable because it assumed control over the jobsite on the day of the injury. Mid-State responded that its role was confined to inspecting and approving the work performed and that it did not exercise control. The district court granted judgment to Mid-State. Plaintiff appeals. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

### A. Facts

The following account is based on unchallenged fact findings by the district court and undisputed evidence. Plaintiff, a resident of North Dakota, was employed by Ayrcom when he was severely injured on December 7, 1996, in rural Wyoming. Ayrcom was an independent contractor employed by RT Communications to install fiber-optic cables and ancillary equipment in accordance with industry standards. This work was subject to inspection by RT Communications or its designee. RT Communications entered into a separate contract with Mid-State, a Utah corporation, to inspect Ayrcom's work and serve as project engineer.

On the morning of December 7, 1996, Plaintiff accompanied his friend and fellow Ayrcom employee Nate Johnson to the jobsite where Johnson and other

-2-

members of his work crew were to finish installing a "remote"—a concrete vault where fiber-optic cables interconnect. Due to his excessive drinking the night before, Johnson became ill and Plaintiff took over the driving. The two arrived at about 12:30 p.m. Jerry Welfl, Mid-State's inspector at the jobsite, was the only person there when they arrived.

Welfl had come to the jobsite at 8:00 a.m. and waited for the Ayrcom crew to arrive and install the remote. While he waited, an Ayrcom employee came to the site to start the backhoe and then left. A second Ayrcom employee, project supervisor Sherman Lysne, also stopped by the jobsite and informed Welfl that a crew was on its way. Shortly before 11:00 a.m. Welfl left, but he soon returned when his supervisor, project engineer Jack Warren, called his cellular phone and informed him that the Ayrcom crew was on the way and that Ayrcom employee Larry Svenspladen would supervise the work crew. Plaintiff and Johnson arrived first. Plaintiff told Welfl that Johnson was sick.

Because Johnson was incapacitated, Welfl asked Plaintiff whether he could operate the backhoe. Plaintiff said he had a little experience operating tractors and similar equipment on the farm where he grew up. According to Welfl, Plaintiff's operation of the backhoe was satisfactory. But Plaintiff was unfamiliar with how to install a remote, so Welfl told him where to dig the trench for steel pipe that needed to be installed.

The rest of the Ayrcom work crew arrived in two groups after 1:00 p.m. About the time of the arrival of the first group, Jeff Hegg and Rod Cunningham, Johnson replaced Plaintiff on the backhoe. A half hour later the second group, Maurice Zikmund and Svenspladen, the supervisor, arrived, although Svenspladen, accompanied by Hegg, left the immediate vicinity of the remote-installation site and began work on a truck. He continued to work on the truck until Plaintiff's injury, at no time giving any instruction or direction to the work crew.

At least twice during the installation process Johnson operated the backhoe. At one point Johnson was awakened (while slumbering on the backhoe) to dig a trench. Johnson then resumed sleeping on the backhoe while Plaintiff, Zikmund, and Cunningham proceeded with installing the necessary pipes and duct work. When they finished, Welfl indicated that the installation was satisfactory so the trench could be filled. Johnson was then roused.

After approving the work, Welfl noticed a minor defect: the pipe at the bottom of the four-foot-deep trench was not adequately marked. Welfl told Plaintiff, who was in the trench along with Zikmund and Cunningham, to mark the pipe with scare tape. It was the usual practice for Ayrcom workers to stand in the trench during backfilling to be sure that the pipe and conduit did not move out of place. To mark the pipe, Plaintiff bent over in the trench to tie the tape to the

end of the pipe. Johnson proceeded to fill the trench with the backhoe. Plaintiff was unaware that Johnson had commenced backfilling the trench and Johnson was unaware that Plaintiff was in it. Attempting to fill the trench, Johnson dislodged a large piece of frozen dirt, causing it to tumble over the dirt pile and into the trench, pinning Plaintiff against the trench wall. Plaintiff's only warning of Johnson's approach was someone's telling him in a normal tone of voice to "look out." Plaintiff suffered severe injuries, incurring medical expenses exceeding $100,000.

*B. Proceedings Below*

At the bench trial Plaintiff argued that Welfl, acting on behalf of Mid-State, "affirmatively assumed duties and exercised control over the manner in which Ayrcom, [Plaintiff's] employer, was accomplishing its contractual responsibilities." Aplt. App. at 21 ¶ 25. But the court found:

> [Welfl] . . . did not affirmatively assume a pervasive and controlling role in the work being accomplished by the Ayrcom employees in this case. Welfl did not control the methods of work or the operative details involved in accomplishing the tasks at hand on the date in question. Rather, Welfl performed duties that were expressly related to his jobsite inspection responsibilities to assure that the project was completed in accordance with the applicable specifications. Welfl did not control the methods of work or operative details, and the Ayrcom crew performed the tasks required to install the remote in the manner in which they usually performed such tasks. Welfl was doing the very job that Mid-State[] was hired to perform; Ayrcom employees were doing the precise tasks that the contract between their employer and RT Communications required. Any crossover of functions between Welfl, acting as Mid-State['s] onsite inspector, and Ayrcom

was incidental and not such that it establishes liability on the part of Mid-State Consultants.

Aplt. App. at 30-31 ¶ 32. The court concluded that Mid-State owed no duty of care to Plaintiff and that Welfl's conduct was not the proximate cause of Plaintiff's injury.

On appeal Plaintiff argues that the district court erred in its application of Wyoming law, clearly erred in its factual finding that Mid-State did not assume control over the work or assume a duty of jobsite safety, and failed to make adequate factual findings as to whether Mid-State assumed an affirmative duty for Plaintiff's safety during the backfilling operations.

## II. DISCUSSION

In a diversity action such as this, we apply the same substantive law as would the forum state and review the district court's determination of that law de novo. *Hays v. Jackson Nat'l Life Ins.*, 105 F.3d 583, 587 (10th Cir. 1997). There is no dispute that Wyoming law governs.

Ayrcom and Mid-State were both retained as independent contractors by RT Communications. Plaintiff relies on Wyoming law regarding the duty of an owner to an employee of an independent contractor hired by the owner. Because it is undisputed that Mid-State was acting as an agent of the owner, RT Communications, we will assume with respect to Plaintiff's claims that Mid-

State's liability would be no greater than if it had been the owner. Both parties have proceeded on this implicit assumption.

Wyoming law adopts the general rule that an owner "is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform." *Jones v. Chevron U.S.A., Inc.*, 718 P.2d 890, 894 (Wyo. 1986). But there are two important exceptions: "(1) workplace owner/employer (owner) exercises controlling and pervasive role over the independent contractor's work; or (2) owner assumes affirmative safety duties." *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004). Liability under both exceptions derives from the exercise of control that is usually absent in the relationship between the owner and an independent contractor. "Because the [general rule of non-liability] is based on the owner's delegation of control to the contractor, it should not apply when the owner maintains control over the hazard that causes the harm." *Jones*, 718 P.2d at 895.

*A. Controlling and Pervasive Role*

We first consider whether Mid-State (through Welfl) exercised a "controlling and pervasive role" over Ayrcom's (Plaintiff's) work. It is not enough to exercise the type of control customary in the relationship between an owner and an independent contractor.

[This] exception does not apply unless the employer (owner) has the right to control the details of the work. The owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work—without changing the relationship from that of the owner and independent contractor or the duties arising from that relationship.

*Franks*, 96 P.3d at 490 (internal citations and quotation marks omitted). For liability to arise, the owner must go "beyond making general suggestions or recommendations [, as by instructing the employees] what to do, how and when to do it, and what equipment . . . to use." *Natural Gas Processing Co. v. Hull*, 886 P.2d 1181, 1186 (Wyo. 1994).

"To determine whether the nature and extent of the control present is sufficient to impose liability, both applicable contractual provisions and the actual exercise of control are relevant." *Franks*, 96 P.3d at 490. "Although the contract is not conclusive evidence of the status of the relationship between parties, it is a strong indication of the associations intended." *Hull*, 886 P.2d at 1184.

Mid-State and Ayrcom had no direct contractual relationship. Their relationship was governed by contracts each had with RT Communications. Although Mid-State's contract with RT Communications is not part of the record on appeal, neither party challenges the district court's characterization of the contract. Under its contract with RT Communications, Mid-State was to assist in

-8-

the design and administration of the project, which included providing inspectors to observe the actual construction and ensure that the installation was completed according to project specifications. Ayrcom's contract, in turn, required it "to provide labor, equipment, and materials" for the project and construct the facilities "in accordance with . . . specifications and in a safe and workmanlike manner." Aplt. App. at 12 ¶ 4; 15 ¶ 11. This contract also specified that RT Communications' agent-inspectors lacked any "authority to direct or advise [Ayrcom] or [its] employees and agents concerning the method or manner by which the work is to be performed." Aplt. Br. Att. C at 68. The contract further required that Ayrcom provide "constant supervision by a competent superintendent . . . who shall be present at the Project during working hours when construction is being carried on." *Id.* Att. D at 31. RT Communications' approved engineer (Mid-State) had the power to recommend to RT Communications that work be suspended, but could not unilaterally suspend the work without written authorization from RT. *Id.* at 32.

Thus, RT Communications retained only the right to inspect and approve Ayrcom's work. It could not delegate greater authority to Mid-State. Retaining such a right of inspection and approval is insufficient to create liability under Wyoming law. *See Jones*, 718 P.2d at 896 (reserving "only the right to inspect the construction work . . . while the independent contractor controls how and when the

work is to be done . . . is probably not sufficient retained control to subject [the employer] to liability").

We thus turn to whether Welfl's course of conduct amounted to sufficient assumption of control to create liability.  The district court found: (1) Welfl instructed Plaintiff where to dig and where to place the pipe and other items, but did not instruct Plaintiff on how to operate the backhoe; (2) he indicated that the work was completed according to specifications and the trench could be filled; (3) he instructed Plaintiff to mark the pipe in the bottom of the trench with scare tape; and (4) he "instruct[ed] Ayrcom employees . . . where to place the remote, pipe and other items . . . and approved their work, but he did not direct the specific manner in which those results should be obtained."  Aplt. App. 22 at ¶ 27.

Plaintiff does not challenge as clearly erroneous any of the district court's findings of historical fact regarding Welfl's conduct.  Rather, he argues that the district court erred in determining that Welfl's conduct did not amount to control sufficient to create a duty.  The existence of a duty in a negligence case is a question of law.  *Cockburn v. Terra Res., Inc.*, 794 P.2d 1334, 1340 (Wyo. 1990); *Jones*, 718 P.2d at 894.  An interesting question not addressed by the parties, however, is whether, once the historical facts are found, the determination that the owner did or did not exercise a "controlling and pervasive role" is a finding of fact, *cf.* Restatement (Second) of Torts § 328C(b) & cmt. b (1965) (issue of

-10-

negligence is ordinarily a matter for the jury even when historical facts are undisputed), or an issue of law. If a finding of fact, we review only for clear error, Fed. R. Civ. P. 52(a); but if an issue of law, our review is de novo. *See Hays*, 105 F.3d at 587. Although the district court labeled its decision a finding of fact, that label is irrelevant for purposes of appeal. *See Featherstone v. Barash*, 345 F.2d 246, 250-51 (10th Cir. 1965); 9A Charles Wright & Arthur Miller, *Fed. Prac. & Proc. Civ. 2d* § 2579 at 537 (2d ed. 1995) ("An appellate court will regard a finding or conclusion for what it is, regardless of the label the trial court may put on it."). In any event, we need not resolve the matter. Even applying the stricter de novo standard of review, the district court must be affirmed.

To the extent that Welfl gave explicit instructions—such as direction on where to bury certain pipes and telling Plaintiff to mark the pipe in the trench with scare tape—the instructions were incidental to and consistent with his role of ensuring that the final product of Ayrcom's work complied with contract requirements. Liability should not turn on whether an inspector says "the specifications require that this pipe must be marked," which undoubtedly does not constitute the requisite control, or expresses the same message with the functional equivalent "you need to mark this pipe." In light of the district court's unchallenged findings of historical fact, we affirm its decision that Mid-State did

not exercise a pervasive and controlling role and hence owed Plaintiff no duty under that theory of liability.

### B. Assumption of Safety Duties

Plaintiff also argues on appeal that Mid-State should have been held liable because it assumed a duty of safety with respect to Plaintiff. To be liable under this theory, the owner "must warrant to the independent contractor, either contractually or as evidenced by its actions, that it has affirmatively assumed duties of safety." *Dow v. La. Land & Exploration Co.*, 77 F.3d 342, 345 (10th Cir. 1996) (applying Wyoming law). Neither retaining the right to inspect and approve the independent contractor's work nor requiring that the independent contractor observe a set of safety rules and practices is sufficient to impose liability. *Jones*, 718 P.2d at 896. *See also Franks*, 96 P.3d at 491 (merely conducting safety briefings or stopping work due to safety concerns does not amount to assumption of affirmative duties for safety).

We reject Plaintiff's contention that Mid-State assumed the requisite duties with respect to jobsite safety. No contractual provision created such a duty. Neither did any conduct by Welfl. Plaintiff suggests that Welfl took on the role of spotter as Johnson began to fill the trench. But he points to no evidence that Welfl communicated to Ayrcom's employees that he was acting as a spotter. Welfl's instruction to Plaintiff to attach scare tape to a pipe in the trench was not even an

-12-

*implicit* assumption of a duty to protect Plaintiff as he performed the task. That task did not obviously increase the risk to Plaintiff because Ayrcom employees typically remained in the trench during backfilling and all three workers were already in the trench when Welfl gave the instruction. (Plaintiff's brief notes testimony that Ayrcom's practice was not to have anyone in the trench during backfilling, but he fails to argue that the district court's contrary finding was clearly erroneous.)

### C. Sufficiency of Findings

Finally, we disagree with Plaintiff's contention that the district court's findings were inadequate. To be sure, "findings of fact must be made by the trial judge as to each and every issue raised by the parties and remaining before him at the conclusion of the trial." *Woods Constr. Co. v. Pool Constr. Co.*, 314 F.2d 405, 407 (10th Cir. 1963). But the district court is not required to "make findings as to every detail." *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 561 (10th Cir. 1981). Findings are sufficient "if they indicate the factual basis for the court's general conclusion as to ultimate facts and are broad enough to cover all material issues." *Id.* Findings of fact should be "liberally construed in support of a judgment." *Zack v. Commissioner*, 291 F.3d 407, 412 (6th Cir. 2002) (internal quotation marks deleted). Even "anemic factual findings are not fatal to the decision so long as a

complete understanding of the issues may be had from the record on appeal."

*Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1079 (1st Cir. 1995).

The sole alleged shortcoming of the findings raised by Plaintiff on appeal is the failure to make a "determination as to whether Welfl had assumed a duty of safety at the time of backfilling." Aplt. Br. at 19. But there was no reason for the district court to focus on that issue in its findings because it was not clear that this was an "issue raised by the parties and remaining . . . at the conclusion of the trial." *Woods Constr. Co.*, 314 F.2d at 407. Although during closing argument the district court speculated on the possibility of Welfl's assuming that duty, defense counsel argued that there was no evidence of such assumption, and Plaintiff points to nothing in the record indicating that his counsel pursued the matter. In this circumstance, it was sufficient for the court's findings to recite the court's view of what happened and to summarize the extent to which Welfl instructed Plaintiff and other Ayrcom employees. There was no necessity for the court also to recite everything that had not happened (such as Welfl's not affirmatively assuming safety duties during backfilling), particularly when, as discussed above, no evidence consistent with the district court's findings of historical fact supported a finding of an affirmative assumption of a duty of safety during the backfilling. The district court's findings were entirely adequate for purposes of appellate review.

The judgment of the district court is AFFIRMED.