**William BOSWELL, Plaintiff,**

v.

**COLLOID ENVIRONMENTAL TECHNOLOGIES COMPANY, American Colloid Company, and AMCOL International Corporation, Defendants.**

**No. 05–CV–158–WCB.**

United States District Court,
D. Wyoming.

May 9, 2006.

---

**51.** *Fears,* 2000 WL 1679418 at *6 (citing advisory committee's note to the 1993 amendments to Rule 37(a)(4)).

**52.** *Id.*

Dayle Wallien, Robert G. Pahlke, Pahlke Smith Snyder Petitt & Eubanks, Scottsbluff, NE, Henry F. Bailey, Jr., Bailey Stock & Harmon, Cheyenne, WY, for Plaintiff.

Richard A. Mincer, Richard G. Schneebeck, Robert Carl Jarosh, Hirst & Applegate, Cheyenne, WY, for Defendants.

### ORDER ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

BEAMAN, United States Magistrate Judge.

This matter having come on regularly for hearing before the Court on the parties' Cross–Motions for Summary Judgment, and this Court having considered the written motions and responses, having reviewed the materials on file, having heard the arguments of counsel in support of, and in opposition to said motions, and being fully advised in the premises, **FINDS** and **ORDERS:**

### PARTIES AND JURISDICTION

This case comes before the Court on plaintiff William Boswell's claim for negligence and premise liability. Plaintiff is a citizen of the State of Nevada, residing in Battle Mountain, Nevada. Defendant Colloid Environmental Technologies Company ("CETCO") is a wholly owned subsidiary of defendant AMCOL International Corporation. American Colloid Company is a wholly owned subsidiary of AMCOL International. Each defendant is an Illinois corporation that does business in Wyoming. Plaintiff claims that the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332.

### BACKGROUND

The undisputed facts are as follows: On September 27, 2001, William Boswell was employed as a commercial truck driver by Freedom Trucking and F & L Trucking (collectively "F & L") (Dep.Boswell, 36–37, 47–48). CETCO had contracted with F & L to transport a shipment of bentonite product from CETCO's Lovell, Wyoming, plant to a destination in California (Second Amended Complaint ¶ 7). On September 27, 2001, William Boswell arrived at CETCO's bentonite processing plant in Lovell, Wyoming, after being dispatched by F & L to drive the load to the destination in California (Id.; Dep. Boswell, 36–37). Upon arriving at the CETCO plant, William Boswell reported to the shipping clerk's office where he was required to read and sign a form entitled, "MSHA Hazard Training (REF: CFR 48 Paragraph 48.31) Traffic and Safety Rules for Visitors and Truck Drivers" (Plf.Ex.B). The MSHA form and the Bill of Lading required that all shipments must be covered with adequate tarpaulin prior to highway movement and the tarping must be done in a specified area (Id.; Plf. Ex. C).

William Boswell backed his truck into the loading dock at the processing plant where a forklift operator began loading the bentonite rolls onto the flatbed trailer (Dep.Boswell, 42–43). As the loading progressed, William Boswell secured each layer of the load with four-inch nylon straps (Id.). William Boswell then drove away from the dock and went to a separate area of the CETCO plant site where truckers could cover their loads (Id. at 67). William Boswell climbed on top of the load and began to cover the bentonite with two tarps that he carried with the trailer. (Id. at 37–38). As William Boswell was unfolding the second tarp he fell from the top of the loaded trailer. (Id. at 67–68). William Boswell suffered severe injuries as a result of his fall, including the fracturing of both elbows, injuring both wrists, and sustaining an injury to the head (Id. at 82, 92). Plaintiff filed this lawsuit on June 6, 2005.

### Plaintiff's Motion for Summary Judgment

The plaintiff, William Boswell, moves for summary judgment and seeks a judgment in his favor and against defendants, finding that defendants are liable as a matter of law to plaintiff for injuries he sustained on September 27, 2001, at defendants' facility in Lovell, Wyoming. However, plaintiff concedes the issue of damages would still need to be determined at trial. Plaintiff argues that summary judgment should be granted in his favor based on two theories: (1) defendant CETCO is collaterally estopped from denying its negligence and causation in this case because it failed to appeal from the finding of negligence and proximate causation in *Poole v. CETCO, et al,* Case No. CL 03–847 in the District Court for Scotts Bluff County, Nebraska; and (2) CETCO is liable as a matter of law for injuries sustained by plaintiff based on sworn admissions from defendants' employees that fall protection should have been available to non-employee truck drivers in CETCO's designated tarping area, that making the fall protection available would have been reasonable and prudent, and that no fall protection was available in 2001, in CETCO's designated tarping area.

### Collateral Estoppel

Plaintiff argues that defendant CETCO should be collaterally estopped from denying its negligence in this case since a Nebraska state court has already found that defendant was negligent as a matter of law in *Poole v. CETCO, et al.* Plaintiff states that four factors are to be analyzed when determining whether an issue is subject to collateral estoppel: (1) whether the issue decided in the

prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Aragon v. Aragon,* 104 P.3d 756 (Wyo.2005).

Plaintiff asserts that the first factor for application of collateral estoppel has been met. Plaintiff contends that the issue in *Poole* was whether CETCO was negligent in failing to provide fall protection to non-employee truckers tarping their loads before highway transport. Plaintiff states that this is the exact issue presented in this case. Plaintiff also argues that the facts and circumstances surrounding the two cases are identical on this issue, further substantiating the application of collateral estoppel.

For the second factor, plaintiff claims that the Nebraska district court issued summary judgment in plaintiff's favor, finding as a matter of law that CETCO was negligent and that such negligence was a proximate cause of the damages in *Poole.* Plaintiff argues that CETCO never appealed this order, thus the adjudication resulted in a judgment on the merits.

Plaintiff asserts that the third factor is also satisfied. Defendant CETCO was a party or in privity with a party to the *Poole* adjudication. Finally, plaintiff claims that CETCO received a full and fair opportunity to litigate the issue of liability in the *Poole* case. Plaintiff points out that the issue does not actually need to be litigated, but rather, that the issue was raised and each party had a fair opportunity to contest the issue. *See In re Hampton,* 272 B.R. 1 (Bkrtcy.D.Wyo.2001); *Stoneking v. Wheatland Rural Elec. Ass'n.,* 72 P.3d 272 (Wyo.2003). CETCO had the opportunity to discuss at length the issue of negligence in its response to plaintiffs' motion for summary judgment in *Poole.*

### Duty of Care

Plaintiff argues that the Wyoming Supreme Court has clearly stated that when a business invitee is injured as a result of a landowner's failure to exercise ordinary and reasonable care for the protection of the business invitee, the landowner is liable. Citing *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982). Additionally, plaintiff cites *Jones v. Chevron* for the proposition that the owner of the workplace who hires an independent contractor and retains the right to direct the manner of an independent contractor's performance, or assumes affirmative duties concerning safety, owes a duty of reasonable care to an employee of an independent contractor even if the employee is injured doing the very work the contractor was hired to perform. 718 P.2d 890, 896 (Wyo.1986).

Plaintiff asserts that defendants retained actual control of the portion of its facility where non-employee truck drivers were required to tarp their loads before leaving the premises. Plaintiff alleges the control asserted over plaintiff was: (1) requiring plaintiff to read and sign the safety training form upon arrival at defendants' facility; (2) requiring plaintiff to tarp the product before leaving defendants' premises; (3) requiring plaintiff to tarp the load only in the area designated by defendants, which did not have any fall protection; and (4) prohibiting plaintiff from tarping inside the defendants' facility where fall protection was available to defendants' employees. This control, plaintiff argues, is sufficient to impose upon defendants a duty as a matter of law to make the tarping area safe for those required to use it. Additionally, plaintiff argues that defendants' knowledge of their duty to plaintiff is heightened by the fact that several of defendants' employees testified in *Poole* that defendants had a duty to provide fall equipment, yet chose not to do so.

## Defendants' Opposition to Plaintiff's Motion for Summary Judgment

### Collateral Estoppel

Defendants point out that there are several characteristics regarding the summary judgment order in *Poole* that call into question the applicability of collateral estoppel in this case. First, defendants state the Nebraska Court's Journal Entry was only an order on partial summary judgment. Al-

though the Court made a ruling regarding liability, the issue of damages was left unresolved. Defendants argue that consequently, under Nebraska law, this type of ruling is not generally considered an appealable order. *Chief Indus., Inc. v. Northern Ins. Co.*, 259 Neb. 771, 612 N.W.2d 225, 230 (2000). Additionally, defendants point out that the Journal Entry entered by the Court was nothing more than a three sentence entry stating that the court found in favor of plaintiffs. The Journal Entry did not include any sort of reasoned opinion to support why the court came to the conclusion that it did. Further, defendants point out that a final judgment was never entered in the matter, but rather, pursuant to a settlement agreement the parties filed a stipulated motion for dismissal with prejudice and, subsequently, the court granted that motion.

Defendants argue that the Journal Entry made by the Nebraska district court in *Poole* is not a final judgment for the purposes of collateral estoppel. Defendants state that "[i]n the federal courts, a 'final judgment' includes any prior adjudication of an issue that was actually and necessarily decided and that is 'sufficiently firm' to be accorded conclusive effect." *Knox v. Lederle Laboratories*, 4 F.3d 875, 880 (10th Cir.1993).

Defendants claim that while there is no Tenth Circuit authority directly on point, other Circuits have held that orders granting partial summary judgment, absent a final judgment as in *Poole*, is not a final judgment for collateral estoppel purposes. *See Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 (5th Cir.1986); *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425 (9th Cir.1995). *See also* RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982); 6 James W. Moore, MOORE'S FEDERAL PRACTICE ¶ 56.20[3.–4] at 56–1228 (3d ed.1999). Defendants explain through the analysis of several Nebraska cases that the factors for collateral estoppel in Nebraska are similarly analyzed as at the federal level.

Defendants argue that since the Journal Entry was not supported by a reasoned opinion, the entry was for a partial summary judgment, and a final order was never entered due to the parties' settlement after the Journal Entry was issued, the summary judgment order is not sufficiently firm nor final to be given collateral estoppel effect.

*Legal Duty*

Defendants assert four broad reasons why defendants did not owe a legal duty of care to plaintiff: 1) The Court decides as a matter of law whether defendants owed a duty to provide fall protection to plaintiff and opinions expressed by employees of defendants concerning the defendants' purported duties are meaningless in resolving that issue; 2) testimony in *Poole* establishes that fall protection was in fact available for truck drivers' use, thus, the question of whether fall protection was available is an issue of material fact that precludes summary judgment in plaintiff's favor; 3) plaintiff's argument that defendants owed him a duty of care as a business invitee ignores settled Wyoming law that a landowner generally owes no such duty to a contractor's employee; and 4) the undisputed material facts of this case, when viewed in light of the applicable law, show that defendants did not exercise the level of control required to assume a duty to plaintiff. Since defendants discuss the latter two points in depth in their Motion for Summary Judgment, the Court will only briefly summarize defendants' first two points of contention in this response.

First, defendants argue that the subjective opinions of CETCO employees do not determine whether defendants owed a duty to provide fall protection to truck drivers. Rather, defendants contend that an objective standard, to be determined by the Court, will be used to decide when a duty of care is present. Therefore, the individual opinions of CETCO's employees concerning the desirability and availability of fall protection cannot determine defendants' legal duty.

Second, defendants allege that there is an issue of material fact that precludes summary judgment in plaintiff's favor. Defendants assert that while plaintiff's position is that no fall protection was available for plaintiff to use, defendants contend that fall protection was available at the work site for plaintiff's use. Defendants claim that whether or not fall protection was available would be a material fact in determining whether a

duty had been breached, therefore, an issue for the finder of fact.

### Defendants' Motion for Summary Judgment

Defendants seek an order from the Court granting summary judgment in defendants' favor, and dismissing all claims asserted by plaintiff. The only issue before the Court in this motion is whether the defendants in this case owed plaintiff a duty of care. Defendants argue that the essential element of duty is one for the Court to determine, and if that element is absent plaintiff's claim for negligence must fail.

Defendants claim that Wyoming has adopted the rule that a work site owner "is not obligated to protect the employee of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform." Citing *Hjelle v. Mid–State Consultants, Inc.*, 394 F.3d 873, 877 (10th Cir.2005). Rather, the owner is liable for injuries to a contractor's employees if and only if it exercised a "controlling and pervasive role" in the work performed by the contractor or assumed affirmative duties with respect to safety. *Id.* (quoting *Franks v. Independent Prod. Co.*, 96 P.3d 484, 490 (Wyo.2004)); *Dow v. Louisiana Land & Exploration Co.*, 77 F.3d 342, 344 (10th Cir.1996); *Cockburn v. Terra Resources, Inc.*, 794 P.2d 1334, 1342 (Wyo.1990); *Accord Hill v. Pacific Power & Light Co.*, 765 P.2d 1348, 1349 (Wyo.1988).

Defendants argue that plaintiff was injured while attempting to tarp the load of bentonite, part of the work F & L was hired to perform. Additionally, it is contended that defendants did not exercise any control over the manner in which plaintiff performed the work that resulted in his injuries, defendants did not assume affirmative duties with respect to safety, and no causal link exists between plaintiff's accident and any general control defendants may have exercised over the work site.

### Control

Defendants argue that defendants must have exerted a "controlling and pervasive role" over the plaintiff and the way he performed the work that caused his injury in order to be held liable for those injuries. *Ramsey v. Pacific Power & Light*, 792 P.2d 1385, 1386 (Wyo.1990). Defendant claims that in order to present the requisite control, plaintiff must show that defendants told plaintiff what to do, instructed him how to do it, and advised him what equipment was to be used. *Hjelle*, 394 F.3d at 878. Defendants contend that this control cannot be shown by plaintiff. Rather, defendants argue that they did not train plaintiff how to tarp a load, they did not provide the equipment he used to accomplish the task, they did not instruct him how to tarp the load, nor did any employee of defendants assist plaintiff in any way.

### Affirmative Safety Duties

Defendants state that in order to affirmatively assume a duty of safety, the work site owner "must warrant to the independent contractor, either contractually or as evidenced by its actions, that it has affirmatively assumed duties of safety." *Id.* at 880. Defendants argue that no safety duties were contractually assumed regarding F & L employees. Defendants claim that they described the shipment and its size, indicated when and where F & L should pick up the load, set forth the shipment's final destination, and mandated that F & L cover bagged products with a tarp while the load was in transit. Defendants assert that none of this was done for safety reasons, nor did defendants perform any safety functions in relations to these instructions.

### Factual Nexus Between Defendants' Control of the Work Site and the Accident

Defendants assert that there is no factual nexus between the amount of control exerted by defendants over the work site and the cause of plaintiff's injuries. *Wessel v. Mapco, Inc.*, 752 P.2d 1363, 1368 (Wyo.1988). Defendants state that for the nexus to be present the work site owner must retain control over the details of the work that caused the plaintiff's injuries. *Hill*, 765 P.2d at 1350. Once again, defendants claim that they had no control over any aspect of the procedure plaintiff used to cover the load of bentonite on the day of the accident, therefore, defendants are entitled to judgment as a matter of law.

*Plaintiff's Opposition to Defendants' Motion for Summary Judgment*

*Control*

Plaintiff maintains that defendants exerted complete control over plaintiff and how he was to conduct his work. Plaintiff states that defendants required plaintiff to tarp his load, plaintiff was required to tarp his load in a designated tarping area where no fall protection existed, and truck drivers were not permitted to utilize defendants' fall protection equipment which was available inside defendants' warehouse. Plaintiff asserts that this control is enough to impose liability against defendants. *Jones v. Chevron,* 718 P.2d 890, 894 (Wyo.1986). Plaintiff argues that he had no choice but to follow defendants regulations regarding the tarping unless he wanted to risk losing his job.

*Affirmative Safety Duties*

Plaintiff claims that the evidence establishes that defendants did assume affirmative safety duties with respect to plaintiff's work. Plaintiff states that he was required to read and sign a safety form which contained specific safety rules for "visitors and truck drivers" while on the premises, and the safety form was implemented out of "CETCO and ACC's sincere concern for your safety". Plaintiff argues that the express purpose of this form was to protect truck drivers like plaintiff. Of significance to plaintiff is the fact that the safety form says nothing about the availability of fall protection for plaintiff. Plaintiff argues that if fall protection was actually available, as defendants assert that it was, defendants have only assumed an additional affirmative safety duty toward plaintiff.

*Factual Nexus Between Defendants' Control of the Work Site and the Accident*

Although not specifically discussed in his opposition, plaintiff does state in passing that there was a direct casual link between plaintiff's accident and the control defendants exercised over the work site. Plaintiff's argument on this subject then ties directly in with the argument regarding the control that was exerted over plaintiff while on defendants' property.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough,* 935 F.2d 1167, 1170 (10th Cir.1991). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 797 (10th Cir.1997). The moving party bears the initial burden of showing that there is an absence of any issues of material fact, and the Court must review the record in the light most favorable to the opposing party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991).

Once the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The non-moving party cannot avoid summary judgment by resting on bare assertions, general denials, conclusory allegations or mere suspicion. *See* Fed.R.Civ.P. 56(e); *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (non-moving party must offer specific facts contradicting the acts averred by the movant that indicate that there is a genuine issue for trial). The non-moving party may not rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party must go beyond

the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case to survive summary judgment. *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1086 (10th Cir.1999). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997).

## *DISCUSSION*

The Court finds that although a motion for summary judgment has been submitted on behalf of both parties, there is really only two issues for the Court to consider. First, the Court will analyze the issue of collateral estoppel and whether it should apply in this case. Then, the Court will determine the issue of whether defendants had a duty of care to plaintiff and, if so, whether defendants breached that duty.

### *Collateral Estoppel*

The first argument asserted in plaintiff's Motion for Summary Judgment is that defendant CETCO should be barred from defending themselves on the issue of negligence since a state court in Nebraska has previously ruled in *Poole v. Ameri–Co Carriers, Inc., CETCO Inc.* that defendant CETCO, Inc. was negligent as a matter of law. Plaintiff claims that all of the elements of collateral estoppel have been met, therefore, the issue should not be re-litigated.

■ Since the *Poole* case was litigated in Nebraska, it is Nebraska law that will determine whether collateral estoppel is applicable to this case. It is well settled law in Nebraska that four conditions must exist for the doctrine of collateral estoppel to apply: 1) the identical issue was decided in a prior action; 2) there was a judgment on the merits which was final; 3) the party against whom the rule is applied was a party or in privity with a party to the prior action; and 4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Thomas Lakes Owners Association v. Riley*, 9 Neb.App. 359, 612 N.W.2d 529, 535 (2000)(citing *Stewart v. Hechtman*, 254 Neb.

992, 581 N.W.2d 416 (1998); *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 567 N.W.2d 178 (1997); *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995); *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996)).

The Court finds that the material facts at issue for this argument are not in dispute. Defendant CETCO was a defendant in the case of *Poole v. CETCO, Inc. et al*, Case No. CL 03–847 in the District Court for Scotts Bluff County, Nebraska. The plaintiffs in that case filed a motion for summary judgment, and defendants had the opportunity to respond. The Nebraska court submitted an order on summary judgment through the entry of a Journal Entry that stated: "The court finds as a matter of law that Defendant CETCO, Inc. was negligent; and that such negligence was a proximate cause of plaintiffs' damages." The Journal Entry did not contain a reasoned opinion explaining how the court reached its conclusion. Further, a final judgment based on this Journal Entry was never entered. Instead, the parties settled the case and filed a Stipulation for Dismissal With Prejudice. The litigation between the parties was finally terminated when the Nebraska Court entered an Order for Dismissal as to Defendant CETCO, Inc.

Based on the undisputed facts, three of the four elements of collateral estoppel have been satisfied. It appears, and defendants do not dispute, that with regard to the first element of the test, the issue in the instant litigation is factually identical as the issue in *Poole*. Additionally, as to the third element, the party against whom the rule is applied was a party or in privity with a party to the prior action, has also been met. *Thomas Lakes Owners Association*, 612 N.W.2d at 535. In the instant case, plaintiff, who was not a party to the previous litigation, is attempting to assert collateral estoppel against defendant CETCO, who was the party negatively impacted by the trial court's decision in the previous litigation. Finally, the fourth element of the test has been satisfied. In the previous litigation there was an opportunity for CETCO to fully and fairly litigate the issue of negligence. *Id.* Both parties were afforded the opportunity to argue their

case in the summary judgment stage of the proceeding, and the court partially ruled in favor of the plaintiff. However, the Court does find it significant to note that although the issue of negligence was argued at summary judgment, the order was not appealable, nor did the parties have the opportunity to fully litigate the issue of damages.

The turning point on whether plaintiff's argument of collateral estoppel can be successful is the second requirement of the doctrine: whether there was a judgment on the merits that was **final**. *Id.* Plaintiff brings to the Court's attention a Journal Entry in which the Nebraska district court found that "as a matter of law that Defendant CETCO, Inc. was negligent; and that such negligence was a proximate cause of plaintiffs' damages." *See* Exhibit A to Plaintiff's Motion for Summary Judgment. However, of even greater importance to this issue is the fact that the Journal Entry did not finally dispose of the case. Rather, the case against defendant was finally disposed of after the parties filed a Stipulation for Dismissal with Prejudice. *See* Exhibit 2, Defendants' Opposition to Plaintiff's Motion for Summary Judgment. The Nebraska court subsequently entered an order dismissing CETCO, Inc. with prejudice. The information that has been submitted to this Court clearly demonstrates that the parties reached a settlement, after which the Nebraska court dismissed the case with prejudice.

■ A consensual settlement is generally not a final judgment for the purposes of collateral estoppel. *See* Jack H. Friedenthal, Mary Kay Kane, and Arthur R. Miller, *Civil Procedure* 709 (Fourth Edition, 2005). The authors state that "[b]y requiring that the issues be litigated, not stipulated or conceded, the courts foster the ability of parties to agree on certain issues before trial without concern that an agreement not to contest a particular issue will have an adverse impact in ways not foreseen at that time. For these reasons, consent judgments or judgments entered as a result of a settlement typically cannot be used as the basis for issue preclusion." *Id. See also Avondale Shipyards*, 786 F.2d at 1272. A consensual settlement is not subject to appeal, nor does a consensual settlement necessarily mean that liability, or the lack thereof, has been determined.

■ There is some authority, however, that suggests that a consent judgment on stipulated issues may be given collateral estoppel effect if it is clear that the parties involved intended their agreement to have that effect. *Id.* (citing *Green v. Ancora–Citronelle Corp.*, 577 F.2d 1380 (9th Cir. 1978)). However, plaintiff has not provided any evidence, let alone clear evidence, that would support the theory that the parties in *Poole* intended for the settlement to have collateral estoppel effect. Without this evidence the Court is left to conclude that the parties did not intend for the agreement in *Poole* to be an admission of liability in all future litigations.

Additionally, the Court finds great significance in the fact that the Journal Entry only addressed the issue of liability and not damages, thus, the order was interlocutory in nature. Therefore, the order was not appealable until the entire case was fully adjudicated and a final judgment was entered by the Court. Further, since the Nebraska court did not give a reasoned opinion explaining the reasons for its findings, this Court finds it difficult to give the Journal Entry the credence plaintiff requests.

Based upon the undisputed facts concerning the summary judgment order, the Journal Entry, and the subsequent settlement in the *Poole* case in Nebraska, the Court finds that the doctrine of collateral estoppel does not apply in this situation. The Court finds that there was not a final judgment entered on the merits in *Poole*, thus, plaintiff has failed to establish the second element of collateral estoppel. Therefore, defendants should be allowed to fully defend themselves on the issue of liability to plaintiff in this matter.

*Legal Duty*

■ The Wyoming Supreme Court has extensively discussed the issue of whether the owner of a work site owes a duty of care to the employee of an independent contractor. In *Jones v. Chevron*, the Court stated that as a general rule "an independent contractor's employee who goes on the owner's premises

is an invitee to whom the owner may be liable for injury caused by an unsafe condition of the premises. But there is an exception. An owner is not obligated to protect the employees of an independent contractor from hazards which are incidental to, or part of, the very work the contractor was hired to perform." *Jones,* 718 P.2d 890, 894 (Wyo. 1986). The Court went on to explain that the rationale for this exception is the lack of control an owner normally has over an independent contractor and the work the independent contractor has been hired to perform. *Id.* at 895. Thus, the Court concluded that since "the exception is based on the owner's delegation of control to the contractor, it [the exception] should not apply when the owner maintains control over the hazard that causes the harm." *Id.*

In order to determine whether or not an owner exercised the type of control necessary to establish liability to an employee of an independent contractor, the *Jones* Court stated:

> if the employer retains only [the right to require that the contractor observe safety rules and practices] but assumes *no* affirmative duties and never directs the method of performance, there is insufficient control or supervision to render it liable. On the other hand, if the employer retains the right to direct the manner of the independent contractor's performance, or assumes affirmative duties with respect to safety, the employer has retained sufficient control to be held liable if he exercises that control negligently. *Id.* at 896.

Thus, the *Jones* Court held that an owner of a work site who retains the right to direct the manner of an independent contractor's performance or assumes affirmative duties with respect to safety owes a duty of reasonable care to an employee of the independent contractor even if the employee is injured doing the very work the contractor was hired to perform. *Id.*

The Wyoming Supreme Court and the Tenth Circuit Court of Appeals have steadfastly applied the principles of *Jones* throughout subsequent cases. Most of the latter cases involve the Court determining when the amount of control an owner exerts over the employee of an independent contractor is going to constitute enough control to impose liability. *See Franks v. Independent Production Co., Inc.,* 96 P.3d 484 (Wyo.2004); *Dow v. Louisiana Land and Exploration Co.,* 77 F.3d 342 (10th Cir.1996); *Ramsey v. Pacific Power and Light,* 792 P.2d 1385 (Wyo.1990); *Natural Gas Processing Co. v. Hull,* 886 P.2d 1181 (Wyo.1994); *Abraham v. Andrews Trucking Co.,* 893 P.2d 1156 (Wyo. 1995).

In *Dow v. Louisiana Land and Exploration Company,* the Court stated that the amount of control the owner has over the independent contractor must be extensive in order to impose liability. *Dow,* 77 F.3d at 344. "[T]he owner must retain more than the general right to order the contractors to stop work, to inspect the progress of the work, to make recommendations thereon, or to prescribe alterations or deviations in the work." *Id.* In *Dow,* the evidence presented showed that the owner told the independent contractor's crew to "get back in the hole", apparently directing the crew to finish the work it was hired to perform, and the crew felt rushed by the presence of the owner at the site. *Id.* at 345. The Court found that this amount of control did not give rise to liability. *Id.* "At best, this evidence shows that [the owner] had a general right to require the crew to begin working. Such a general, limited right does not give rise to liability." *Id.*

In *Franks v. Independent Production Co., Inc.,* 96 P.3d 484 (Wyo.2004), an employee of a coal bed methane site directed employees of an independent contractor to unload well casing with a particular backhoe. The Court again stated that this was not sufficient control to impose liability on the coal bed methane site operator. "In Wyoming, the overriding element in determining whether one is an employee or an independent contractor is dependent on whether the employer has a right to control the details of the work whereby liability is sought to be established." *Id.* at 490. "The evidence shows that Andregg [employee of the site operator] ordered use of the backhoe to unload the casing and then sat in his truck as Justin and Wayne [employees of the independent con-

tractor] proceeded and had nothing else to do with the unloading until the accident. Andregg can require that employees of other independent contractors begin working without giving rise to liability." *Id.* at 491.

■ The Wyoming Supreme Court has also determined what will constitute an affirmative assumption of a safety duty on the part of the work site owner. The Court has stated that to be held liable under this theory the owner "must warrant to the independent contractor, either contractually or as evidenced by its actions, that it has affirmatively assumed duties of safety." *Hjelle,* 394 F.3d at 880 (citing *Dow,* 77 F.3d at 345). Further, requiring that the independent contractor observe a set of safety rules and practices is insufficient to impose liability. *Id.* (citing *Jones,* 718 P.2d at 896) (*see also Franks,* 96 P.3d at 491)(merely conducting safety briefings or stopping work due to safety concerns does not amount to assumption of affirmative duties for safety).

■ The Court finds that the following material facts are not in dispute: Plaintiff arrived at defendants' plant on September 27, 2001, to pick up and deliver a load of bentonite pursuant to a contract between defendants and F & L. Plaintiff was required to report to the shipping clerk's office and sign a safety affirmation entitled, "MSHA Hazard Training (REF: CFR 48 Paragraph 48.31) Traffic and Safety Rules for Visitors and Truck Drivers." This form explained that all shipments must be covered with adequate tarpaulin, and the tarping must be done in a designated area. After a CETCO employee loaded the bentonite onto plaintiff's truck, plaintiff secured the load with nylon straps and drove to the area of the plant site where he could cover the load. Plaintiff climbed on top of the load and began tarping it, without the assistance of any employee of defendants, and plaintiff utilized his own equipment during the tarping process. Plaintiff then fell off of the load while unfolding the second tarp, sustaining serious injuries.

The Court finds, after an analysis of the facts in this case in conjunction with the case law, that defendants did not owe plaintiff a legal duty of care. First, plaintiff was injured while tarping the load at defendants' plant. In his deposition, plaintiff indicated that the tarping of a load is something that is frequently done within the trucking business.

Q. Now, I assume that as part of your experience as a flatbed truck driver that you've had to cover loads with tarps?

A. Oh, yes, sir.

Q. And I'm sure that some loads don't need to be tarped?

A. Some loads don't need to be tarped, but other loads do need to be tarped, and other loads need to be tarped before you leave the facility with them.

Q. Why would a load, in your experience, or a shipment need to be tarped down?

A. Well, it doesn't matter why I think it needs to be tarped down. If the customer or the person that I'm loading it or is loading it on my trailer says it needs to be tarped, then it needs to be tarped. It doesn't matter if I think it's going to be damaged or what. If the person or the company loading the trailer says you need to weather protect this load, which is tarped, then it's tarped.

Defendants' Opposition to Plaintiff's Motion for Summary Judgment, Exhibit 8, pg. 32–33. Based on plaintiff's deposition testimony, it is clear that requests to tarp a load are not unusual within the trucking business, and tarping a load is something a truck driver routinely expects to do when picking up a load of product. Tarping a load is a potential hazard which is incidental to, or part of, the very work a truck driver is hired to perform. In his deposition, plaintiff stated that in his experience tarping is a normal part of his job and the tarping is solely the responsibility of the flatbed truck driver. *See* Defendants' Motion for Summary Judgment, Excerpt Boswell Deposition, pg. 35. Therefore, defendants did not owe a duty to plaintiff unless plaintiff can prove that defendants retained the right to direct the manner of plaintiff's performance or defendants assumed an affirmative duty with respect to safety.

It is undisputed that plaintiff was required to sign a safety affirmation which required him to tarp his load in a designated area.

However, simply requiring plaintiff to acknowledge and follow specified safety rules is not enough control by defendants over the way plaintiff actually performs his work to impose liability on defendants. In fact, the Wyoming Supreme Court requires a great deal more control before liability will be imposed. The facts discussed in *Dow* and *Franks* shows that the premises owners had much more contact and potential for control over the employees of the independent contractor than in the case now at issue, and the Court refused to impose liability in those cases. In the present case, defendants did not require plaintiff to tarp his load in a certain way; no individual employed by defendants assisted plaintiff in tarping the load; and plaintiff used his own equipment to tarp the materials on his truck. *See* Defendants' Motion for Summary Judgment, Excerpt Boswell Deposition, pg. 42–44, 67. After plaintiff acknowledged the safety rules and drove to the designated area, defendants had no control over the way plaintiff performed his duties. Defendants simply required plaintiff to acknowledge the work expected to be performed based on the contract between defendants and F & L. There was no control exerted by defendants beyond that point.

Additionally, the Court finds that the requirement of the signing of a safety form does not constitute an affirmative assumption of duty. In accordance with the previously discussed decisions, simply requiring plaintiff to sign the form acknowledging procedures that may have been implemented for the safety of the truck driver does not give rise to the level of imposing liability upon defendants.

Further, the Court finds that the previous deposition testimony of defendants' employees in the *Poole* case, that fall protection should have been made available to non-employee truck drivers, and that it would have been reasonable and prudent to provide the fall protection, fails to establish that defendants had a legal duty towards plaintiff. When determining whether a duty exists, the Court must look at the facts from an objective standard. *See John Roden, Inc. v. Davis*, 460 P.2d 209, 213–14 (Wyo.1969). Since the standard is objective, it is inappropriate to let a subjective individual opinion of the defendants' employees determine whether a legal duty exists.

The Court finds that since defendants did not have a legal duty of care to plaintiff, an essential element of a negligence action is missing. Although the Court finds that the question of whether fall equipment was available for plaintiff's use at defendants' premises is a material fact in dispute, that fact is irrelevant without a legal duty to provide the fall protection. Therefore, the Court finds that summary judgment should be granted in defendants' favor.

### CONCLUSION

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's Motion for Summary Judgment be, and the same hereby is, DENIED. It is,

FURTHER ORDERED that defendants' Motion for Summary Judgment be, and the same hereby is, GRANTED. It is,

FINALLY ORDERED that all claims contained in plaintiff's Complaint be, and the same hereby are, DISMISSED with prejudice. The parties shall bear their own costs.